## CRISP v. GILLESPEY, *Sheriff.*

No. 4488.    Opinion Filed August 3, 1915.

(151 Pac. 196.)

1. **FRAUDULENT CONVEYANCES—Presumptions—Conveyances to Relatives.** In a suit where it is claimed property has been conveyed in fraud of creditors, the fact that the parties to the alleged sale are related by blood or marriage does not, of itself, establish fraud; but such fact of relationship may be considered in connection with other evidence tending to impeach the transaction; and in such case, especially if between near relatives, who are members of the same household, the transaction will be given much closer scrutiny than if between strangers.

2. **SAME—Actions—Evidence.** In such cases, it is often impossible to prove actual fraud and collusion between the parties, when attacked by third persons, by direct and positive evidence; and the attacking party is often compelled, through the inherent necessities of the situation, to rely upon presumptive evidence, growing out of indicia and badges of fraud, developed by the circumstances attending the transaction; and therefore the range of inquiry in such cases must necessarily be very extensive, and bring within its scope all the circumstances bearing upon the question.

3. **TRIAL—Verdict—Time for Objection.** In a replevin suit for certain horses the plaintiff took possession and held the property at the time of trial. The only issue was plaintiff's ownership, and the jury decided against him, awarding a recovery thereof to defendant, but failed to fix the value of the property. On this verdict, the court entered judgment solely for a return of the property. No objection was made to the form or substance of the verdict until some days afterward in the motion for new trial. This objection was not timely.

4. **TRIAL—Verdict—Objections.** An objection to the mere form of a verdict, to be timely, must be made before the jury separates, at a time when the error as to form could be corrected.

(Syllabus by Brewer, C.)

*Error from County Court, Nowata County;*
*Wm. F. Gilluly, Judge.*

Action by R. C. Crisp against William F. Gillespey, Sheriff of Nowata County. Judgment for defendant, and plaintiff brings error. Affirmed.

*W. J. Campbell*, for plaintiff in error.

*W. D. Humphrey* and *Tillotson & Elliott (Alva C. Hough*, on the brief), for defendant in error.

Opin.on by BREWER, C. The appellant, R. C. Crisp, brought this suit in replevin to recover four horses and two mules from the sheriff of Nowata county, who held the same under an execution against J. W., Susie, A., W. L., J. S., and Elizabeth Crisp. The plaintiff claims to be the absolute owner of said property under an alleged purchase of a portion thereof from his father, and the rest from his brother, two of the judgment defendants. The answer puts in issue his ownership, by denying same, and by the further claim that plaintiff and the other members of his family were in a fraudulent conspiracy and collusion to falsely claim and pretend that the title had passed to plaintiff from the judgment defendants for the fraudulent purpose of defeating the collection of the judgment underlying the execution.

The material issue in the case, as conceded by counsel for both sides, was the question of whether or not the plaintiff was the owner of the property. The jury found that he was not, and he has appealed to this court, and predicates error: (1) That the court should have instructed a verdict for plaintiff; (2) irregularity in the form of the verdict; (3) the instruction of the court as to conspiracy; (4) the admission in evidence of a certain chattel mortgage, signed by all the members of the family, except plaintiff, and covering this property.

1. At the close of the evidence, the plaintiff asked the court to instruct the jury to find for him; and, in

another instruction, asked the court to find for him if
the evidence showed that a purchase had been made by
him of the property from A. C. Crisp. Neither of these
instructions should have been given. The jury was abun-
dantly justified in finding as it did. The plaintiff, one of
the youngest members of his family, consisting of father,
mother, and numerous brothers, seems to have been about
the only one of the family not involved in the judgment
sought to be collected by the sheriff. They all lived to-
gether and used the property in question in the cultiva-
tion of a certain farm. The other members of the family
had mortgaged all this property some time before to
secure the very debt which the execution involved here
was to collect; but, for failure to refile the mortgage, its
lien had become lost and the judgment was rendered on
the note. The story told by plaintiff, who at the time of
his alleged purchase was barely grown, as to how he
bought certain of the property from his father, and cer-
tain other of the property from his brother, paying large
sums of money therefor, which money was "in bills and
silver," amounting to as much as $850 at one time, with-
out being able to show that he had ever earned any con-
siderable amount of money, or in fact had worked to any
great extent, except as a member of the family, is open
to grave suspicion, when we consider that he was the
only member of the family who was not involved in in-
debtedness and judgments. Transactions of this kind
between members of a family, closely related by blood,
whereby it is claimed that certain of them who are in-
volved transfer their property to others who are not, do
not stand on the same footing as do transactions between
strangers. We have had occasion recently to go some-
what into this question in the case of *Wimberly, Trustee,*

*v.* *Winstock,* 46 Okla. 645, 149 Pac. 238, wherein it is held:

"1.  In a suit in equity, attacking a conveyance of lands as fraudulent against creditors, the fact that the parties to the conveyance are related by blood or marriage does not, of itself, establish fraud in such transfer; but such fact of relationship may be considered in connection with other evidence, tending to impeach the transaction; and in such case, especially if between near relations, who are members of the same household, the transactions will be given much closer scrutiny than if between strangers.

"2.  In such cases, it is often impossible to prove actual fraud and collusion between the parties to the conveyance, when attacked by third persons, by direct and positive evidence; and the attacking party is often compelled, through the inherent necessities of the situation, to rely upon presumptive evidence, growing out of *indicia* and badges of fraud, developed by the circumstances attending the transaction; and therefore the range of inquiry in such cases must necessarily be very extensive, and bring within its scope all the circumstances bearing upon the question."

So, we say, taking the situation as disclosed at the trial, the relation of the parties, the unreasonableness of plaintiff's story, and all the other facts and circumstances, the jury was amply justified in finding as it did.

The verdict in this case found the issues in favor of defendant, but failed to fix the value of the stock involved in the suit.  It is clearly shown in the case that all the property involved was taken from the hands of the sheriff and turned over to the plaintiff under his bond filed at the commencement of the action, and that all such property was in the hands of plaintiff at the time of trial.  The claim here is that the verdict was fatally de-

fective, for the reason that it did not fix the value of the property; and that therefore a judgment in the alternative could not be rendered.     That a judgment in the alternative could not be rendered on such a verdict is true, and no such judgment was rendered in this case.   The judgment was for the return of the property to the defendant. Under the statute (section 5696, Comp. Laws 1909; section 4807, Rev. Laws 1910), the defendant was entitled to have had the value of the property fixed in the verdict, and a judgment rendered thereon in an alternative form, providing that, if the property could not be had, he should recover its value.   It appears, however, that neither party objected at the time to the form of the verdict, or to its failure to fix the value of the property.     It was returned into court without objection by either party, was filed, and the judgment actually rendered upon it was in accord with its terms.   The first objection made to the form of the verdict and to the fact that it failed to fix the value of the property was made by the plaintiff in error in his motion for a new trial.   This objection came too late.

In *Ward v. Richards,* 28 Okla. 629, 115 Pac. 791, it is said in the syllabus:

"Plaintiff in error commenced an action in replevin for the possession of a cow, calf, and yearling.   A general verdict was returned in favor of the defendant without assessing the value of the property, either in gross or specifically.   No request at any time was made by either party for the jury to make a finding as to the value either in gross or specifically, nor was any exception reserved.   Judgment was rendered in favor of the defendant for the recovery of the specific chattels and goods, but not for any alternate value.   Held, that no reversible error is presented."

In the case of *Davis v. Gray,* 39 Okla. 386, 134 Pac. 1100, following the holding in the above case, it is said in the syllabus:

"In an action of replevin the jury found for the plaintiff for a return of the animal in controversy. At the time of trial the animal was in the defendant's possession. The verdict did not fix the value of the animal, nor was any objection made to the form of the verdict until three days thereafter, when it was assigned as error in the motion for a new trial. Held that, no timely objection to the form of the verdict having been made, no reversible error is presented."

This objection, as held in *Davis v. Gray, supra,* was not timely. A "timely objection" to the form of a verdict means an objection, lodged with the court before the discharge of the jury, at a time when the irregularity could have been corrected. There are cases in replevin where the fixing of the value of the property is important to the losing party. Such cases are those in which the losing party is entitled to pay off the amount of some mortgage or other lien, which represents the interest of the prevailing party, as the basis of his right of possession, and, after having done so, is entitled to have and keep the property. Ordinarily, however, in a straight suit of replevin, where each of the parties claim to be, respectively, the owner thereof, the fixing of the value of the property would be unimportant to the loser, for the reason that he would have no right to pay the value and keep the property. In such cases the prevailing party has the right to a restoration of the specific property involved, if it can be returned to him; and, if not, then to its value to compensate for its loss. In the case at bar, it is very doubtful if the plaintiff in error would have had the right to pay off the amount named in the

execution and keep the property, as the sheriff might be liable to the execution debtors, if he took the property from them, for any excess of proceeds over the amount of the execution. But it is unnecessary to go into that point and decide it. If he was entitled to do so, and therefore to have the value fixed, he has neglected to demand his right at the time and in the manner necessary for his protection, under the cases cited above.

3. Complaint is made that the court committed reversible error in instructing the jury on the question of conspiracy between the plaintiff and the other members of his family, relating to the ownership of the property, and the alleged scheme to defraud the judgment creditor. This contention is likewise unsound. The charge of collusion and conspiracy was sufficiently set up in the answer, and there was proof of various kinds, including statements by various of the parties, tending to show that the claim of plaintiff of ownership of the property was but a result of a scheme hatched by this family to save the property from the demands of creditors.

The next and last contention is a claim that the court erred in permitting the introduction in evidence of a chattel mortgage, signed by all the judgment creditors. This was not error. The mortgage was not introduced to show a lien on this property, for the lien had been lost, because of failure to renew. It was introduced and was competent, as tending to throw light on the question of ownership, and whether or not a claimed transfer of a portion of the property from some of the mortgagors to the plaintiff, shortly after the mortgage was given, was valid or fraudulent. It was a mere circumstance, to be considered, together with all the other evidence and circumstances in the case, for whatever it might be worth.

Finding no substantial error in the record, the judgment of the trial court should, in all things, be affirmed.

The former opinion herein is withdrawn, this opinion to be filed as the opinion of the court. Petition for rehearing is denied.

By the Court: It is so ordered.