# WIMBERLY v. WINSTOCK et al.

No. 3724.  Opinion Filed May 25, 1915.

(149 Pac. 238.)

1.  **FRAUDULENT CONVEYANCES—Conveyance of Land—Relations—Proof of Fraud.** In a suit in equity, attacking a conveyance of lands as fraudulent against creditors, the fact that the parties to the conveyance are related by blood or marriage does not, of itself establish fraud in such transfer; but such fact of relationship may be considered in connection with other evidence, tending to impeach the transaction; and in such case, especially if between near relations, who are members of the same household, the transactions will be given much closer scrutiny than if between strangers.

2.  **FRAUDULENT CONVEYANCES—Conveyance of Land—Fraud of Creditors—Scope of Proof.** In such cases, it is often impossible to prove actual fraud and collusion between the parties to the conveyance, when attacked by third persons, by direct and positive evidence; and the attacking party is often compelled, through the inherent necessities of the situation, to rely upon presumptive evidence growing out of idicia and badges of fraud, developed by the circumstances attending the transaction; and therefore, the range of inquiry in such cases must necessarily be very extensive and bring within its scope all the circumstances bearing upon the question.

3.  **APPEAL AND ERROR—Decision.** In a case, purely of equity cognizance, where the parties are not entitled to a jury, this court has on appeal, the power to go into and examine the evidence; and when the judgment of the trial court is clearly against the weight of same, render, or cause to be rendered, such judgment as the trial court should have rendered.
    (Syllabus by Brewer, C.)

*Error from District Court, Carter County;*

*S. H. Russell, Judge.*

Action by W. H. Wimberly, as trustee in bankruptcy of the Baltimore Mercantile Company, against R. M. Winstock and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*A. C. Cruce, M. K. Cruce, S. T. Bledsoe* and *Samuel W. Hayes,* for plaintiff in error.

*J. B. Moore* and *J. A. Bass,* for defendants in error.

BREWER, C. This suit was brought by W. H. Wimberly, as trustee in bankruptcy of the Baltimore Mercantile Company, against R. M. Winstock and R. L. Winstock. The Baltimore Mercantile Company was a tradename for a copartnership, composed of I. H. Winstock, Sol L. Winstock, and Mrs. A. B. Levine, who are brothers and sisters respectively of the defendants.

The purpose of the suit was to cancel a certain deed, executed by two of the partners of the bankrupt firm to their sisters, the defendants, on May 22, 1909, and which conveyed to said defendants certain farming lands, situated in Carter and Marshall counties. It is alleged that said lands, while standing in the name of I. H. and Sol L. Winstock, were in fact the property of said bankrupt firm, and that at the time the deed was made, the firm and the bankrupt partners were insolvent; and that the deed was without consideration, and was made with the intent to hinder, delay, and defraud the creditors of the bankrupts; that just prior to making the deed, the two brothers entered into collusion with the defendants, for the purpose of cheating the creditors of the Baltimore Mercantile Company, and to that end, sent money belonging to the firm, which was in business at Ardmore, to the defendants, who resided in New York City, for the purpose of being used by defendants in paying for the lands; that the transaction was a scheme upon the part of the bankrupt brothers and Mrs. Levine, in connection with their New York sisters, the defendants, that the money should be furnished from the business at Ardmore for the purpose of being deposited in New York in the name of the defendants, so that they could execute their checks against it back to the brothers for the consideration named in the deed; the intention and purpose being for the sisters in New York to hold

the property in trust for the later use and benefit of the bankrupts, for the purpose of hindering, delaying, and defrauding the creditors.

The cause was tried in the district court to a jury, and at the conclusion of all the evidence, the court, upon motion of defendants, instructed the jury to return a verdict in their favor. This was done, and judgment entered on the verdict, that defendants go hence with their costs. From this judgment the plaintiff below brings this appeal by petition in error and case-made duly certified.

The only question urged by the plaintiff. in error is, that the court committed error in instructing the jury to return a verdict in favor of the defendants. To show this, the brief is largely devoted to a careful summary of the evidence, which it is claimed not only shows that there was substantial evidence tending to show that the transfer of the land was fraudulent, without any real consideration—a mere pretense and sham—but that it abundantly shows this fact, when properly studied and analyzed. We have examined the evidence, and there is no doubt but that there was evidence in the case, tending strongly to impeach the transaction, through which the two members of the bankrupt firm passed the title to these lands to their two sisters, who were members of the immediate household of one of the grantors. The story of the sisters as to how they came possessed of and handled the $5,000 they claimed to have paid for the land, by carrying it about in currency for seven or eight years, from city to city, when they would put it in safety boxes, without making a deposit in a bank, until they wanted to pay their brothers for the land, when they transferred the currency, in various sums, from their deposit box to the bank, making two trips for this purpose in one day, is a most remarkable, or at least, a very unusual thing. The proof, too, that just prior to the payment of $2,500 of the purchase price, and during about six weeks

just prior to the bankruptcy, there passed from members of the bankrupt firm to the defendants a great many registered letters, is strongly significant. During the month of December, there was an average of about one letter a day, and on at least four different days, two registered letters were sent them from the bankrupts. Further, it is shown that the deed was executed and rcorded weeks before defendants claim to have made the trade and paid for the land, which neither of them had ever seen nor knew anything about, either as to quantity, quality, or value. One of the defendants says she did not know whether the property was a farm, or city property. She seems to have thought it to be the latter. There are also many other significant circumstances, not necessary to mention, as we think there should be a new trial ordered.

But defendants in error now say that this is purely a case of equity cognizance, and that as a verdict of the jury would have been only advisory, that we should treat the judgment rendered on the verdict as a decision of a chancellor upon all the evidence. This is an equity case; it is not a suit for "the recovery of money, or specific real or personal property," within the purview of section 4993, Rev. Laws 1910. To be sure, its purpose was to recover these lands, as assets of the estate, but this was to be effectuated through an equitable decree, declaring the title holders to be holding as trustees, etc.

Our view of the evidence, and the natural and legitimate inferences and deductions to be drawn from it, are so at variance with the views of the trial court, as evidenced in the direction to the jury, that we are led to believe that the trial judge must have been laboring at the time under a misapprehension of the rules of equity, or of evidence, applicable to a case of this nature, and therefore erroneously concluded that because the plaintiff could produce no witness who could, from actual knowledge, testify: that there was collusion between the parties, and fraud

in the sale, that he had failed in his proof. This court has, in *Brooks v. Garner,* 20 Okla. 236, 94 Pac. 694, well said:

. "This suit is one to declare a constructive trust. The facts growing out of legal and actual fraud and, as usual, the evidence thereof are largely in the breasts of the parties perpetrating it. This condition is particularly true in cases where the question of good faith is involved. The plaintiff, by reason of this inherent situation, lacks the power of delving into the minds of the parties and drawing forth physical evidence of the evil motives of adversaries; and he is thereby driven to the necessity of establishing it by circumstantial evidence, and by proving facts which are known in law as badges of fraud. Speaking on this subject, Mr. Wait (Fraudulent Conveyances, sec. 225) says: 'Badges of fraud are suspicious circumstances that overhang a transaction, or appearance on the face of the papers. The possible *indicia* of fraud are so numerous that no court could pretend to anticipate and catalogue them. A single one may stamp the transaction as fraudulent, and, when several are found in combination, strong and clear evidence on the part of the upholder of the transaction will be required to repel the conclusion of fraud."

"In the case of *King v. Moon,* 42 Mo. 551-554, the court says: 'While the law will not imply or presume fraud, yet common experience teaches that it is seldom that any direct or positive proof can be obtained in regard to any given transaction, no matter how fraudulent it may be. Fraud, in common with the highest crimes known to law, is commonly made out by circumstantial or presumptive evidence. The very charge implies color and disguise, to be dissipated by *indicia* alone. Per Cowen, J., *Waterbury v. Sturtevant,* 18 Wend. (N. Y.) 353. Fraud may be presumed in equity, but must be proved at law. Therefore courts of equity, it is said, will act upon circumstances as indicating fraud which courts of law would not deem satisfactory proofs; or, in other words, will grant relief upon the ground of fraud established by presumptive evidence, which evidence courts of law would not always deem sufficient to justify a verdict. *Jackson v. King,* 4 Cow. (N. Y.) 207, 15 Am. Dec. 354; 1 Story, Eq. Jur. arts. 190-193, and cases cited; 3 Greenl. Ev. art. 254. The range of inquiry in the investigation must necessarily be

very extensive, and bring within its scope all the circumstances bearing upon the question.'

"In the case of *McDaniels v. Perkins,* 64 Iowa, 174, 19 N. W. 902, the court says: 'The members of this court have all read the evidence separately, and have reached the conclusion that the plaintiff's allegations are sustained. While no one fact is proven which, taken by itself, would necessarily show fraud, yet we cannot divest ourselves of the impression that a fraudulent result was intended, when we look at the case as a whole."

Note the expression in *King v. Moon, supra*:

"Fraud may be presumed in equity, but must be proved at law."

The court and counsel were trying this case as a law case, and the error as to the nature of the case is very probably the reason for the error as to the probative effect of the evidence, and therefore, of the instruction to find for defendants.

It may also be quite pertinent to call attention to the general rules applied to the construction of conveyances between near relatives, which is fully stated in 20 Cyc. 601, as follows:

"The fact that the parties to a conveyance are related to each other, either by blood or marriage, does not of itself establish fraud in the transfer; but the fact of relationship may properly be considered in connection with other evidence tending to impeach the transaction. In some states it is held that the transaction will be more closely scrutinized than if it were between strangers, and that it may be shown to be fraudulent by less proof than in cases where such relationship does not exist; and that the party claiming the benefit of such transaction is held to a fuller and stricter proof of its justice, and the fairness of the transaction, after it is shown to be *prima facie* fraudulent, than would otherwise be required. If a fair price is paid, the transaction will not be held fraudulent merely because the parties are related to each other; but the conveyance will be looked on with suspicion where the grantor is heavily indebted and the con-

veyance is of all his property. If the consideration is fictitious and the conveyance is made when the grantor is insolvent, the conveyance will be set aside. If the consideration is inadequate, the sale will be deemed fraudulent where the seller is heavily indebted and the sale is attended with suspicious circumstances, such as the fact that the transferee is possessed of no means, the fact that the sale is one of long credit, the fact that there is no reasonable apparent motive for the purchase, the fact that the seller takes an active interest in the property and business after its transfer, the fact that the parties cannot explain how the indebtedness with the grantee arose and how the amount claimed is made up, or the fact that the consideration is an unsecured note of the grantee who is insolvent," etc.

But, it is answered, the judgment of the court, finding for defendant, had evidence to support it, and therefore this court cannot go into the record, further than to ascertain this fact. That would be true, if this was a law case, one which must be tried to a jury, unless the right is waived; but defendants have convinced us, and we have held, that it is not. Therefore, being purely an equity case, we would have the right to go into and weigh the evidence, and reverse the judgment of the trial court, if, upon a consideration of all the evidence, it is made clear that the judgment was contrary to the weight of the evidence. On this point, this court, in *Schock v. Fish*, 45 Okla. 12, 144 Pac. 584, discusses the statutes in the light of the constitutional provision, and announces the following rule:.

"* * * The true rule, and which should be recognized by this court, is, in all cases which were cognizable only in a court of chancery, it is the duty of this court to consider the whole record, to weigh the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, render or cause to be rendered such judgment as the trial court should have rendered."

Under the authority of the above case, we might go into the evidence here and decide on its weight, and render a proper

decree; but we do not feel that it would be exactly right to do so, for the reason that as the court tried the case as at law, it may be that all the proof allowable in equity has not been developed.

We are therefore of the opinion that the cause should be reversed and remanded for a new trial on the merits.

By the Court: It is so ordered.