**PRENTICE v. FREEMAN.**

No. 10051—Opinion Filed Sept. 9, 1919.

Rehearing Denied Nov. 18, 1919.

(Syllabus by the Court.)

**1. Trial—Jury—Verdict in Equity—Effect.**

In the trial of equity cases the court may call in a jury for the purpose of advising the court upon questions of fact, and the court may either adopt or reject their conclusions as to the same, as he sees fit.

**2. Same—Special Interrogatories.**

Where a jury is impaneled in a case purely of equitable cognizance to aid the court in determining the facts, it is entirely within the discretion of the court as to what interrogatories the court propounds to such jury; and error cannot properly be assigned that the court erred in propounding such interrogatories, or that the interrogatories propounded were not germane to the issues involved.

**3. Appeal and Error—Equity Causes—Consideration of Evidence.**

In all cases which were cognizable only in a court of chancery, this court on appeal has the power to consider the whole record, to weigh the evidence, and, when the judgment of the trial court is clearly against the weight of the evidence, render or cause to be rendered such judgment as the trial court should have rendered.

Error from District Court, Tulsa County; N. E. McNeill, Judge.

Action by Anna Freeman as administratrix, against F. D. Prentice. From judgment for plaintiff the defendant brings error. Reversed and remanded with directions.

Prentice & Bell and Ledbetter, Stuart & Bell, for plaintiff in error.

I. H. Spears, for defendant in error.

JOHNSON, J. On July 27, 1916, defendant in error, as plaintiff, filed in the superior court of Tulsa county, Oklahoma, her petition against plaintiff in error, alleging that Mahalia J. Mitchell died intestate December 18th, 1915, seized of an equity in and to lot 7, block 81, of Joe Kostachek's resubdivision of block 81, original townsite of Tulsa, Oklahoma; that said Mahalia J. Mitchell in her lifetime contracted with Joe Kostachek for the purchase of said lot for three hundred and twenty-five dollars, on which she paid all except about $86; that on September 8th, 1915, deceased borrowed from plaintiff in error sufficient money to finish paying said purchase price, and as security for the loan had deed for said lot 7 made to plaintiff in error instead of to herself; that plaintiff in error had other claims against said deceased, Mahalia J. Mitchell, which had never been adjusted and which said plaintiff in error was holding against said real estate; that the estate of said decedent was entitled to such equity as said decedent had in and to said lot; that an accounting was necessary between said estate and plaintiff in error. Said petition prayed for an accounting and that said deed be declared a lien and asked for other relief.

Said cause was transferred to the district court of Tulsa county for trial.

The answer and cross-petition of plaintiff in error denied all allegations in petition of defendant in error not controverted, explained or denied in answer and cross-petition; alleged that said Mahalia J. Mitchell died intestate and without issue, leaving Charles Mitchell, her husband, as her sole and only heir-at-law; that about April 12th, 1912, Joe Kostachek, then owner of the premises in controversy, entered into contract of sale with Charles Mitchell and Mahalia J. Mitchell, a copy of which contract was attached to said answer and cross-petition; that said contract contained certain endorsements of payments thereon, all of which payments except $25 were made by Charles Mitchell; that said premises under and by the terms of said contract were owned by said Charles Mitchell and Mahalia J. Mitchell jointly as tenants in common or joint tenants; that the interest of Mahalia J. Mitchell in said premises descended to Charles Mitchell as her sole and only heir-at-law; that the payments made on said property by said Charles Mitchell and Mahalia J. Mitchell were earned by both of them during their married life; that the interest of said Mahalia J. Mitchell in said premises was by her directed to be sold to plaintiff in error on September 8th, 1915, as evidenced by warranty deed of that date; that plaintiff in error on December 5th, 1917, for a valuable consideration, purchased from said Charles Mitchell the premises in controversy as evidenced by warranty deed of said date, a copy of which was attached to said answer and cross-petition. In his answer and cross-petition plaintiff in error claimed to be the owner of the premises; that Mahalia J. Mitchell did not have any interest in said premises at time of her death and that her administratrix had not acquired any interest in said premises since her death. Plaintiff in error prayed for dismissal of the action; that plaintiff take nothing and the title to said premises be quieted in plaintiff in error, and prayed for other and further relief.

The reply of the defendant in error was in substance and in fact a denial of the affirmative allegations of said answer and cross-petition.

The case was tried before a jury on the 17th day of January, 1918, and the court submitted to the jury three interrogatories for their answer. No other issues were submitted to the jury by the court than as contained in said interrogatories. The first interrogatory reads as follows: "Do you find, gentlemen, by a preponderance of the evidence, that the deed made and executed by Mr. Kostachek to F. D. Prentice was intended between Mahalia J. Mitchell and F. D. Prentice as a deed, or was it taken as a mortgage to secure certain indebtedness and money advanced?" The jury answered the first interrogatory that it was a mortgage. The second interrogatory reads: "What do you find from the evidence was the indebtedness and money advanced from F. D. Prentice of the firm of Prentice & Mason to Mahalia J. Mitchell?" The jury answered this interrogatory, "$86.35." The third interrogatory reads: "If you find that it (the deed from Kostachek to plaintiff in error) was a mortgage, what do you find from the evidence was the rental value and what was received from the premises since in the possession of Mr. Prentice?" The answer of the jury to this third interrogatory was as follows: "17 months at $12—$204."

Said verdict was returned on January 17th, 1918, and after returning the verdict the cause was continued until the 14th day of February, 1918. Plaintiff in error, on January 19th, 1918, filed his exceptions to the instructions of the court, and also to special findings of the jury. On February 14th, 1918, said exception to instructions of the court and special findings of the jury were overruled, and plaintiff in error excepted. On said 14th day of February, 1918, the court found on the special verdict of the jury that said deed was only intended as a mortgage instead of a deed; was taken only to secure $86.35; that reasonable rental value of said property for 17 months at $12.00 per month was $204, and that the other indebtedness shown by exhibits introduced by both plaintiff in error and defendant in error to be due plaintiff from Mahalia J. Mitchell was no part of the consideration of said deed, and the plaintiff in error should file an account with the administratrix of the estate of said decedent for allowance of his claim for such indebtedness.

The language used by the court in the decree is as follows:

"It is therefore considered and adjudged by the court that the deed given by Joe Kostachek to F. D. Prentice, covering the premises above described, was only a mortgage between the said F. D. Prentice and said Mahalia J. Mitchell, and the said F. D. Prentice only paid $86.35 as a consideration of said deed, and the reasonable rental value for the above described premises for the time that the said F. D. Prentice has been in possession of the same is $204, and the plaintiff have and recover judgment against said defendant in the sum of $204 and cost."

To said judgment plaintiff in error then and there duly excepted, and gave notice in open court of his intention to appeal to the Supreme Court of the State of Oklahoma. On February 14, 1918, plaintiff in error filed his motion for a new trial, alleging: First: Error and abuse of discretion in submitting this, an equity case, to the jury. Second:

Excessive damages. Third: Error in assessment in the amount of recovery for defendant in error, when a recovery should have been for plaintiff in error. Fourth: Error in submitting interrogatories to the jury, as shown by exception filed by plaintiff in error. Fifth: The judgment of the court was not sustained by sufficient evidence, and was contrary to law. Sixth: Error of law occurring at the trial, and excepted to by plaintiff in error at the time. Seventh: Error of the court in overruling motion for judgment for plaintiff in error notwithstanding the findings of the jury.

The motion of the defendant for a new trial was overruled by the court, and exceptions duly saved by the defendant, his exceptions embraced in a bill of exceptions and duly incorporated in the case-made. The defendant's petition in error was filed in this court on June 28th, 1918, and contains 18 assignments of error, which are grouped by the defendant and discussed in his brief under five headings, the first of which is as follows:

"The finding of the court and jury that the deed from Joe Kostachek to plaintiff in error dated September 8th, 1915, was intended between Mahalia J. Mitchell and plaintiff in error as a mortgage is not supported by but is clearly contrary to the weight of the evidence. The error of the trial court here set out was complained of in the 3rd, 4th and 7th grounds of the motion for a new trial, the overruling of which motion for a new trial is complained of in our first assignment of error. Said error is also complained of in our 13th and 14th assignments of error."

The deed in question bears the date of September 8th, 1915, and was in form a general warranty deed signed by Joe Kostachek and conveying the land described in plaintiff's petition to the defendant. F. D. Prentice, which deed contained all the necessary covenants of a general warranty deed, filed for record on the date of its purported execution, at 10 o'clock a. m. and duly recorded in Record 179, page 275.

The plaintiff brought this action as administratrix of the estate of Mahalia J. Mitchell, deceased, and, as shown by the testimony, she was a sister of the deceased. She alleged in her petition in substance that the deed, though regular in form, was intended as a mortgage. That is, it was given to secure a loan of money. She testified upon the trial and without objection that she was a sister of Mahalia J. Mitchell and was administratrix of her estate; that Mahalia J. Mitchell was dead, was killed by her husband, Charles Mitchell, on December 18th, 1915; that her husband shot and killed her, for which crime he was sent to the penitentiary at McAlester for a term of 25 years and was confined therein; that after her sister was killed she and her mother occupied the premises in question for sometime, living in one house and renting the other out, and collected the rents and paid two payments to Mr. Prentice, the defendant. She was asked on direct examination:

"Why did you give it to him?"

"A. Well he told me if I would pay what she owed him back he would deed back to us, that he did not want it if I would pay what she owed, he would deed it back.

"Q. Did he tell you how much she owed him?

"A. Yes, he put some figures on a piece of paper and told me, then he told me that he had given her a statement he says a few days before she gone up there, and he told me to look around there for it, I would find it.

"Q. Did you look around for that statement?

"A. Yes, sir; I did.

"Q. Did you find it?

"A. I did. And he told me it was on that statement.

"Q. Did you remember about how many payments you made to him?

"A. Two.

"Q. Tell the jury why you did not make any further payments.

"A. Well, after I was made administratrix then the judge told me not to pay any moneys without orders of the court and I did not pay out any. I did not get any orders.

"Q. He never did present a claim to the county court?

"A. Not if I knew it.

"Q. You did not make any further demands?

"A. I did not.

"Q. I will hand you this paper and ask is that the paper that you found when you looked around her place?

"A. Yes, sir; that is the paper.

"Q. That is the statement that he had reference to?

"A. I suppose, this is the only one I got. (Paper marked plaintiff's Exhibit A and was offered in evidence without objection.)

(Witness identifies two receipts which were made Exhibits B and C, B being for $10.00 and C for $5.00.)

"Q. I will ask you how many conversations did he have with you, did he ever at any time claim that he bought this property?

"By the Court: Tell what he said about it.

"A. Well, he didn't do so much talking. He told me though that he thought she deeded the property to him and when any time that I paid him the amount of money that she owed him that he would deed it back to

us, and he would like me to pay it $15.00 a month until I paid up the amount that she owed him and then he would deed the property back to some of us, any of us that wanted it."

She testified that she rented the little house for $8.00 and the other for $10.00 for a while, and after a while at $12.00. She testified that the defendant took possession of the property last June a year ago and collected the rent since the judgment in the justice court giving him possession. She testified on cross-examination that she never paid but the $15.00, and that was less than the rent she had received for it.

She was asked on cross-examination:

"Q. Didn't I tell you this, if you would pay me what I said in this statement that Mahalia J. Mitchell owed prior to her death on the 18th of December, if you would pay me that I would live up to my agreement and make you or anybody else a deed to that property?

"A. I don't know exactly what you are saying, but I can tell you exactly what you told me, if I would pay you $15.00 a month until I paid you what she owed you that you would deed the property back to any of us.

"Q. All right. Didn't I say that you came to me claiming the property and I told you I gave her a statement on the 3rd of December and if you people would do that I would make you a deed for it or anybody else?

"A. Yes, you told me that.

"Q. And I told you to look for that statement, didn't I?

"A. Yes.

"Q. Did you ever make these payments, you can say yes or no to that.

"A. I made you these two payments, $15.00.

"Q. Did you ever make any other payments, in fact, did you ever pay the amount due in that statement?

"A. No, I did not."

I. H. Spears, attorney for plaintiff, testified in her behalf as follows:

"A short while after the death of Mahalia Mitchell, Miss Anna Freeman came to me with the papers that had been found among the belongings of Mahalia J. Mitchell, and wanted me to do whatever was necessary to get everything straightened out. I proceeded to investigate this lot and other lots adjacent to it and some other property in that addition that Mahalia J. Mitchell was purchasing, the former from Joe Kostachek and the latter from another party in the addition. Upon examining the records I found that, with respect to lot 7, which is the property in litigation here, that Mr. Prentice had a deed—F. D. Prentice. I went to his office and talked with him about it. Well, he said that Mahalia J. Mitchell

owed him and as soon as ever any of her people wanted to pay the bill off, he would deed this property back to her. I asked him to give me an itemized statement of the account. The first time he put me off, he said he did not have time then, but he would let me have it. So some weeks later I went to his office and asked him for this statement. He wrote three little figures; I have forgotten whether it was 350 or 340, that is what he wrote on paper, plain white piece of paper, just three figures, three hundred and forty dollars I told him that is not what I wanted. I wanted an itemized statement. He never did give me an itemized statement. During the same time I had filed a petition in the county court."

He further testified that the rental value of the property was reasonably $18.00 per month.

The defendant testified in his own behalf as follows:

"Now, I will state that some time prior to the 8th day of September, 1915, Mahalia Mitchell brought that contract to my office and wanted to sell her interest in the property to me, and I would not buy it at that time; that later on she came again to me about it, and then I had a talk with Mr. Kostachek and afterwards I agreed with her that I would buy her interest in the property, and on the—she had an appointment with Mr. Kostachek to meet at my office but for a number of times she failed to meet, and finally on the 8th of September they came to my office and the deed was executed and I purchased her interest in the property. I have the deed here, which I will ask the stenographer to mark 'Defendant's Exhibit 2' for the purpose of identification. (Which said deed so offered was thereupon marked by the reporter, 'Defendant's Exhibit 2,' and is hereinafter set out in full.) That at the time this deed was executed, Charles Mitchell came to my office, Mahalia Mitchell and Joe Kostachek; that Charley consented that I should buy her interest and take this deed, as I did take it, for the entire property, with the understanding that I was to only have a half interest in this property with him, and I took the deed accordingly and paid Mr. Kostachek what was the balance due on the property, and also credited her what she owed us at that time for a number of cases that we had tried for her, and I proceeded then to pay Mr. Mason his half of the attorney's fees, which was a part of the consideration for this deed, of her interest in this property; that I made a contract with her to rent this property at fifteen dollars a month and she paid me—I will have to refresh my memory—a payment on October 4th, 1915, or $15.00 rent, on November 3rd $5.00 and on November 6th $10.00 rent on this property. She at that time said she could rent the property for $30.00 a month and I was to have half of the rent, because I owned a half interest in it.

"Things ran along that way until about the 8th day of December, and then she again

came to my office and wanted to know—said she thought she would get rid of Charley, and wanted to know whether I would sell her interest back to her, and what I would take for it. I didn't want to bother with it and didn't want to do it, in the first place I didn't want to take the property, but I told her what I would do, and I made her up a statement at that time of what I would do. and I gave that to my stenographer to copy, and he copied it from the statement that I hold in my hand, but instead of making it the way I had it, he made it debit and credit, here. (Witness produces paper, which is marked by the Reporter Defendant's Exhibit 3, and is hereinafter set out in full.) I agreed then to sell her back the property for the balance due according to the statement, which was $237.30, and I received no more payments from her, but later on after her death Anna Freeman came in to see me about it and I told her I had given her a statement of what I would do on December 8th; that that was an agreement that I would sell her back the property and if she would look in her effects she would find the statement; and afterwards she came to my office and said she had found it, and then she wanted to know about the property and I told her if she would pay, or her mother or anybody else would pay the amount that I was claiming upon my promise to sell it back to her on December 8th, that I would deed the property to anybody that they wanted me to in the family, that she might name, that Anna might name, but otherwise she must pay the rent. She made me two or three payments, as they have set out here, after that, and I receipted for them, and if they had carried out or paid me the balance I would have given the deed for their interest in the property just as I stated, though there was no agreement at the time the deed of September 8th was executed that I was to convey this back to her, nor was there any agreement that this was to be security for any loan I was making her at that time; I was simply buying her interest in the property. Now I had arranged with Charles to buy his and his other lots there, 4, 5 and 6. There is evidence here introduced by the plaintiff that she had other property there. She didn't own any other property. All she had was that interest in lot 4, and Charley Mitchell, her husband, had a contract for the purchase of lots 4, 5 and 6, which I was also going to buy. Then Anna Freeman made those three payments and I wrote the receipts, and if she had paid me the balance in accordance with her agreement of December 8th, that I would make the deed, otherwise, those payments were to be treated as rent.

"From that time on I didn't pay very much attention to the property, because I was busy, this was negro property and I was not particularly interested in it, it took too much time looking after it and they finally failed to pay entirely and Spears got into the case and he was very aggressive, he was going to make me do this and that, and he told me that the estate didn't owe me anything, that I had a deed for that property and I would deed it back to anybody that would give me

the money that I told Mahalia I would take on December 8th and if they did that I would convey it to whoever they pleased, but that was the purchase price of the property and was not a mortgage, nor was it a loan. With his pertinacity he tried very hard to make me say it was a loan, but I never made a loan to negroes and would not say so.

"Then he cited me in this court to have me present or show what that estate owed me, and I came into this court and testified and told Judge Standeven—no, I think it was Judge Ramsey, that I made a statement to Mahalia Mitchell on December 8th and if they carried it out I would live up to it, but up to this date they have never carried it out, or any part of it, except as has been introduced in evidence here; that they quit paying on it, I didn't get anything from them, and I proceeded to put them out of the property by forcible detainer and since then I have been in possession of the property. In fact I have been in possession of the property all the time, because Mahalia Mitchell became my tenant when I bought her interest.

"That Anna Freeman came into the office on two or three occasions after that and made those payments. Spears was in the office once or twice, but I had no such conversation with Spears as he has related. I never made any claim against the estate because I never had one against the estate. The day that the deed was made, on September 8th, it was distinctly understood that I was simply buying her interest and that Charley Mitchell had a half interest, that he had made payments on that property and his interest was the same as Mahalia Mitchell's; and that they were having considerable trouble and in settling with reference to their property rights, because he was claiming more than lot 7, he was claiming an interest in his lots 4, 5 and 6.

That after that time, I have forgotten just the date, I got a deed from Charley Mitchell for the same premises, because I considered he had a half interest in the property, and I took his deed from him for the premises. I believe that is all."

Joe Kostachek's testimony in substance was that the original contract for the purchase of the lot in question was made between him and the deceased before she was married, then Mahalia Ross, and the contract price was $325.00. That after she married her husband, Charles Mitchell, joined in the contract and the price was paid except something like $100, was paid by both the parties, sometimes one made the payments and sometimes the other, and as to the exact amount paid by each he was unable to state. He further testified as follows:

"Q. If there has been any change in this contract you adopted the contract for the sale of these premises lot 7 in controversy? A. Yes, it was. It was these signatures just that way, just as it looks now, and I told him these signatures was changed, she says: 'We just agreed on that, me and Charley,' that is her husband. Q. And you also agreed on it?

A. I told her, 'That is all right; if you are satisfied I don't care.' Q. Now, Joe, do you know whether or not that is the contract that was turned over to me at the time I took the deed from you on September 8th, 1915?' A. You mean if this is the same contract? Q. Yes. A. Now, I don't remember. Q. It is the only contract you had for that lot? A. Well, that is all it was, yes. Q. Do you remember seeing it in my office on September 8th, the day the deed was made? A. Yes, I seen it there. Q. We had it there at any rate at that time? A. Yes, sir. Q. Do you remember hearing the discussion between ourselves about her owning only one-half interest in the property? A. Yes, there had been talk about it amongst yourselves. Q. And that is what we was talking about there, was it not? A. Yes. Q. And was it a fact that this I bought from Mahalia J. Mitchell was her one-half interest as talked of at that time? A. Well, of course, I don't know anything about it, there was nothing said to me. Q. I say as we talked? A. Yes, yes. Q. That is what we were talking about, was her one-half interest in this property at that time? A. Yes. By the Court: What was said at the time you made the deed to Mr. Prentice? He told you to make the deed to him? A. Why it was Mrs. Mitchell. The Court: What did she say? A. She says, 'Here I got your money for you and I want you to make a deed to Judge Prentice'; that is all she told him. She didn't do much talking to me at that time because I told her——The Court: No, what did she say, did she say whether she sold it? A. No, she didn't say anything to me about whether she sold it or borrowed money, she didn't say anything about it. The Court: All right."

E. N. Bryant testified on behalf of the defendant that the deceased Mahalia J. Mitchell said to him a short time before her death she had sold the property to the defendant, testifying as follows:

"Q. Did you have any other conversation with her about selling her interest in the property? A. She told me if I would not buy that she would get Mr. Prentice or somebody else to take it, and I told her if she could then she had better do so, and the next time I saw her she said she had released her equity, she went out and quit-claimed it. I don't know what it was. Q. Tell what was said. A. She said she gave a quit-claim deed to her equity in it."

L. W. Mason testified on behalf of the defendant as follows:

"Q. I ask you if you remember of Mahalia J. Mitchell having made a deed in our office to F. D. Prentice? A. Yes, I remember the occasion. Q. I will ask you if when I talked to you about buying her interest in that property I asked you to go in with me on a half interest or take half of it with me? A. Yes, yes, she was over there discussing the matter with you and she wanted to sell her interest in that property, she and Charley were fighting and quarreling, and you called

me Judge and asked me if I wanted to buy a half interest with you, I told you I didn't. and you told me that you were buying her interest and that she owed us a fee and it would suit you if I cared to have you join me in the purchase, and I told you no, I didn't want it, and you gave me the fee and took the deed yourself."

On cross-examination:

"Q. Who else was present at the time she was talking with you? A. Mahalia J. Mitchell and Charles was there, I do not know whether Charley heard the conversation or not. Q. When was that? A. I am not sure about the exact date, about the date the deed was executed that is my impression. I know that I declined to buy and I know that he paid me the fee because I would not buy, I know that. By Mr. Prentice: Q. I will ask you, Mr. Mason, if this statement that has been introduced in evidence contained any part of Charley's fee? A. No, sir, it did not. Q. Have you looked over it? A. Yes, I have looked it over pretty carefully. Q. I will ask you if at that time we were attorneys for Mahalia J. Mitchell? A. Yes, sir, we had been."

The plaintiff sued to have a deed absolute upon its face declared to be a mortgage, and for an accounting, and it was therefore an action purely of equitable cognizance, and was so treated by the trial court and counsel for both parties.

Then, under the rules of this court, neither party was entitled to a jury as a matter of right, but the trial court was fully justified in submitting to a jury to be answered by it any interrogatories at all germane to the issues involved, but the findings of the jury were advisory merely, and in such cases it was not only the right but the duty of the court to finally determine all questions of fact as well as of law. Success Realty Co. v. Trowbridge, 50 Okla. 402, 150 Pac. 898; Murray et al. v. Snowden, 25 Okla. 421, 106 Pac. 645; Okla. Trust Co. v. Stein. 39 Okla. 756, 136 Pac. 746; Ky. Bank and Trust Co. v. Pritchard, 44 Okla. 87, 143 Pac. 338; Hartsog v. Berry, 45 Okla. 277, 145 Pac. 328.

Under the well-established doctrine laid down in numerous decisions of this court it is the duty of this court to weigh the evidence and determine which side has the clear weight of the evidence and decide this appeal in accordance therewith. Schock v. Fish. 45 Okla. 12. 144 Pac. 584; Overstreet v. Citizen's Bank, 12 Okla. 383, 72 Pac. 379; Wimberly v. Winstock, 46 Okla. 645, 149 Pac. 238; Cook v. Warner. 41 Okla. 781, 140 Pac. 424.

We have examined the entire record and the testimony in behalf of the defendant shows that he had a deed to the lot in controversy absolute upon its face containing all the usual covenants of warranty. The testimony of the grantor in the deed. Joe Kostachek. and the grantee, the defendant, fully

sustain the deed and that the consideration was paid. The testimony of Charles Mitchell, the husband of the deceased, and L. W. Mason, who were present at the time of the transaction, fully sustains the deed, as well as the testimony of the defendant as to the facts of the prior negotiations by him with the deceased leading up to the time of the execution of the deed, as well as what occurred at the time the deed was executed. The record further discloses that they were all and the only witnesses who were in a position to know the facts concerning this transaction. This testimony was admitted without objection and the witnesses were in no way impeached. Hence their testimony must be considered as facts established upon the trial of the case. The plaintiff's testimony, that of herself and her attorney of record, I. H. Spear, was to statements made by the defendant that might be construed to be contradictory in some measure to his testimony given upon the witness stand, but not to in any way seriously contradict the same.

So we are constrained to hold in view of the testimony in this case that the great weight of the same is clearly against the findings of the jury, and therefore the verdict of the jury and judgment of the court are reversed and the case is hereby remanded and the trial court directed to set aside the judgment rendered herein in favor of the plaintiff, and render judgment in favor of the defendant, quieting his title to the lot in controversy, and for costs incurred in both courts.

OWEN, C. J., and HARRISON, PITCHFORD, and HIGGINS, JJ., concur.