### RENAS v. GREEN et al.

No. 11002—Opinion Filed Feb. 6, 1923.

(Syllabus.)

1. **Appeal and Error — Review of Equity Case—Right to Jury Trial.**

An action to have a deed absolute on its face declared to be a mortgage and for an

accounting is one of purely equitable cognizance and neither party is entitled to a jury. In such actions, it is the duty of this court to weigh the evidence and decide the appeal in accordance therewith.

### 2. Mortgages—Absolute Deed as Mortgage.

Whether any particular transaction amounts to a mortgage, or a sale upon condition, or with agreement to reconvey upon a contingency, is to be determined by ascertaining whether the transaction was intended as a loan. The burden of proving that the instrument was intended to operate as a mortgage is upon the plaintiff, and to establish its character as a mortgage the evidence must be clear, unequivocal, and convincing.

### 3. Same—Deed Absolute and Not Mortgage.

Evidence examined, and held, to show by clear weight of the evidence that the deed was executed as an absolute conveyance and not as a mortgage.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by W. C. Green and J. E. Green against Mary Renas to have warranty deed declared mortgage and for an accounting. Judgment for plaintiffs, and defendant appeals. Reversed and remanded, with directions.

Womack, Brown & Cund and H. Grady Ross, for plaintiff in error.

J. B. Wilkinson, for defendants in error.

COCHRAN, J. This action was commenced by W. C. Green and J. E. Green to have a warranty deed executed to Mary Renas on March 23, 1914, declared to be a mortgage and for an accounting. The case was tried to a jury and a verdict returned in favor of defendant in the sum of $200, and for all taxes paid by her since the execution of the deed by the plaintiffs to the defendant, and for the foreclosure of her mortgage lien. On the same date, judgment was rendered by the court which, after reciting the rendition of the verdict, ordered that the plaintiffs recover from the defendant the possession of the land in controversy and that the defendant recover from the plaintiffs the sum of $200 and taxes for the years 1914 to 1918, inclusive, and ordering that the property be sold and proceeds applied to the payment of the judgment in favor of the defendant. From this judgment the defendant has prosecuted this appeal.

It appears that both parties and the trial court treated this case as a jury case. No special interrogatories were propounded to the jury, but the case was submitted on general instructions and a general verdict returned. No findings of fact, either general or special, were made by the trial court and it does not appear that the trial court adopted the general verdict of the jury. An action to have a deed absolute upon its face declared to be a mortgage and for an accounting is one of purely equitable cognizance. Prentice v. Freeman, 76 Okla. 260, 185 Pac. 87. In such case neither party was entitled to a jury as a matter of right but the trial court was justified in submitting to a jury, to be answered by it, any interrogatory at all germane to the issues involved but the findings of the jury would be advisory merely, and in such case it was not only right but the duty of the court to finally determine all questions of fact as well as law. Prentice v. Freeman, supra; Success Realty Co. v. Trowbridge, 50 Okla. 402, 150 Pac. 898; Murray et al. v. Snowder, 25 Okla. 421, 106 Pac. 645; Kentucky Bank & Trust Co. v. Pritchett et al., 44 Okla. 87, 143 Pac. 338; Hartsog et al. v. Berry et al., 45 Okla. 277, 145 Pac. 328. It is the duty of this court to weigh the evidence and determine which side has the clear weight of evidence and decide this appeal in accordance therewith. Prentice v. Freeman, supra; Wimberly v. Winstock et al., 46 Okla. 645, 149 Pac. 238.

Before weighing this evidence, we will call attention to the rule by which this evidence is to be weighed. In Worley, Receiver, v. Carter et al., 30 Okla. 642, 121 Pac. 669, a portion of the syllabus is as follows:

"Whether any particular transaction amounts to a mortgage, or a sale upon condition, or with agreement to reconvey upon a contingency, is to be determined by ascertaining whether the transaction was intended as a loan. If there remains a debt for which the conveyance was only a security, and the collection of which may be enforced independently of the security, the whole transaction amounts to a mortgage, whatever language the parties may have used in expressing their agreement. In such cases, it matters not that the transaction is evidenced by one or more instruments, or what the writings may or may not show, if, nevertheless, the agreement in fact exists. The real intention of the parties, either as shown upon the face of the writing, or as disclosed by extrinsic evidence, must govern in equity."

In McNamara v. Culver, 22 Kan. 668, the court said:

"The test is the existence or nonexistence of a debt. And equity looks behind the form to the fact. If the transaction was intended as a loan, if there remains a debt for which the conveyance is only a securi-

ty, and the collection of which may be enforced independent of the security, equity will hold it a mortgage, no matter whether the transaction is evidenced by one or two instruments." Hall v. Russell, 72 Oklahoma, 178 Pac. 679; McKean v. McCloud, 81 Okla. 77, 196 Pac. 935.

Pomeroy in his work on Equity Jurisprudence, vol. 3, p. 2841, lays down this rule as to the degree of proof required:

"The presumption, of course, arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; to overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail."

This is stated to be a general rule in vol. 19, R. C. L. 263, and is supported by numerous authorities.

In Armstrong v. Phillips et al., 82 Okla. 82, 198 Pac. 499, a portion of the fourth paragraph of the syllabus is as follows:

"The burden of proving that the instrument was intended to operate as a mortgage is upon the plaintiff, and the evidence must satisfy the high standard of probative force requiring that the same must be cogent, convincing, clear, and satisfactory, otherwise such proof must fail."

The testimony on the part of the plaintiffs is that in 1909 they borrowed some money from Chris Renas on two different occasions, executing their notes and a mortgage on the property in controversy. On March 23, 1914, the deed which is sought to be cancelled in this suit was executed to Mrs. Renas, and the plaintiffs' statement as to the circumstances under which the deed was executed is as follows:

"Well, the indebtedness had been running for sometime and he said he was using some other party's money. I don't remember just whose money he said, anyway he was using some other party's money and he wanted to clear it up and he come and asked if I would give him a deed to this property with the understanding he would sell the property and pay the taxes up on it, sell this property and give their money back, whatever balance they had coming, and give the rest of it back to us, and we says, yes, we will do that.' "

The plaintiffs testified that they delivered the deed and possession of the property to the defendant under those circumstances. There was no note executed, no agreement made as to the length of time the indebtedness was to run, or the rate of interest to be paid. The plaintiff also testified that the notes executed in 1909 had never been turned over to them by Chris Renas. They also testified that when this deed was executed in 1914, the insurance policy on the property was assigned to the defendant; that in June, 1914, after the conveyance was executed in March, the building on the premises burned and defendant collected $1,000 insurance. The plaintiffs contended that at that time they only owed Chris Renas about $600 and that about $400 of the money collected on the insurance belonged to the plaintiffs, yet they never called on defendant or Chris Renas for a settlement, or for the difference between the $1,000 collected and the amount due by them to Chris Renas. One of the plaintiffs did testify that Chris Renas told him that the indebtedness and the taxes amounted to more than the insurance collected, but he made no examination to ascertain the condition or the amount of the taxes, or to attempt to have an accounting in any manner. In the latter part of 1918, Mrs. Renas came to one of the plaintiffs and wanted him to make an affidavit that L. D. Green and Mrs. W. J. Green were one and the same person, and said she wanted to get the name straightened out so she could sell the property. He at that time made no claim to any ownership in the property and did not claim any ownership until the oil development commenced in Stephens county.

The testimony of the defendant agrees with the testimony of the plaintiffs up to the time of the execution of the deed in controversy; but his testimony in regard to that transaction was that when this money was due he was in Duncan one day and ascertained that the property had just been sold for taxes amounting to more than $300, and he took the matter up with the owners of the property and they made an absolute conveyance of the property to him and he turned over all the papers, notes, and mortgages to Mrs. Green under an agreement that the execution and delivery of the deed would pay all of the indebtedness; that the notes and evidence of debt were turned over to Mrs. Green at the same time the conveyance was executed, and that the first he knew of the claim that the deed was only a mortgage was when the suit was brought against his wife. The testimony further shows that the deed was taken in the name of Mrs. Renas; that she advanced the money to pay the taxes under the agreement with her husband that the deed to the property would be taken in her name.

Mr. McAfee testified that he carried the insurance on the property and at the time the conveyance was made to Mrs. Renas the insurance was transferred to her, and the plaintiffs stated to him in connection with the ownership of the property that they were giving up everything and paying off everything, that they were getting free from the whole thing.

From the testimony introduced, we are of the opinion that the clear weight of the testimony shows that the deed to the defendant was executed as an absolute conveyance and was not intended to operate as a mortgage to secure the indebtedness of the plaintiffs to the defendant.

The judgment of the trial court is reversed and cause remanded, with directions that judgment be entered for the defendant, Mary Renas, and against the plaintiffs, W. C. Green and J. E. Green.

JOHNSON, V. C. J., and KANE, KENNAMER, NICHOLSON, and BRANSON, JJ., concur.