## LATIMER v. LATIMER et al.

No. 11700—Opinion Filed Nov. 6, 1923.

Rehearing Denied Jan. 22, 1924.

Second Rehearing Denied Feb. 19, 1924.

### 1. Mortgages—Deed as Mortgage.

Josephine Latimer, owner of 40 acres of land, conveyed the same by warranty deed to Rollow to secure the payment of $421.60 owing to Rollow by her husband. When the money became due, pursuant to an agreement between the husband of Josephine Latimer and D. F. Latimer, Rollow conveyed the land by quitclaim deed to D. F. Latimer for the amount of the indebtedness and a small additional sum which was paid to the husband of Josephine Latimer. D. F. Latimer, in the division of his property among his children, conveyed this tract of land to Cynthia Latimer by warranty deed. Held, Cynthia Latimer held as mortgagee and not as owner.

### 2. Same.

The attorney of Cynthia Latimer, upon representation to Josephine Latimer and her husband that Cynthia Latimer was dissatisfied with the quitclaim deed from Rollow to D. F. Latimer, induced them, without any other consideration than that of satisfying Cynthia Latimer, to execute a warranty deed to Cynthia Latimer. Held, there was sufficient evidence to sustain the findings of the trial court that the same was intended by Josephine Latimer and her husband to be a mortgage.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garvin County; Frank Mathews, Assigned Judge.

Action by Josephine Latimer and Mattie Latimer Wheeler against Cynthia Latimer. Judgment for plaintiffs and defendant appeals. Affirmed.

W. E. Latimer and Bowling & Farmer, for plaintiff in error.

Blanton & Osborn, for defendants in error.

Opinion by RAY, C. This is an action to have certain deeds conveying 40 acres of land in Garvin county adjudged to be mortgages, and to determine the amount of the mortgage indebtedness. Plaintiffs recovered judgment and the defendant appeals, and contends that the evidence was insufficient to sustain the judgment.

A jury made the following findings:

"(1) We, the jury. duly empaneled and sworn in the above entitled and numbered

cause, do upon our oaths, find that the quitclaim deed made by J. A. Rollow to D. F. Latimer on the 11th day of November, 1913, was intended by Josephine B. Latimer and her husband and D. F. Latimer to be a mortgage.

"(2) We further find that the instrument made on the 20th day of January, 1915, by Josephine B. Latimer and her husband to Cynthia Latimer was intended by all the parties thereto to be a mortgage.

"(3) We further find that Josephine B. Latimer is due D. F. Latimer and his heirs the sum of $219.80 principal and the sum of $96.71 as interest.

"(4) We further find that the rental value of said land while in the possession of D. F. Latimer and Cynthia Latimer to be $480 and the taxes paid by said D. F. Latimer and Cynthia Latimer to be $——. Allowed."

The trial court adopted the findings of the jury in part and modified the findings in part in this language:

"Thereupon the court being fully advised in the premises adopts the findings of the jury as to the first two questions, that is, that the instruments which are claimed by the defendant to be deeds are in fact mortgages, but the court modifies the finding of the jury as to the amount due the defendant by the plaintiffs and finds in lieu thereof that the plaintiffs are due the said defendant the sum of $525, with interest thereon from the 15 day of November, 1913, at 8 per cent. per annum, and that the defendant should be allowed the taxes paid on said lands to the amount of $85 and that the said defendant should be charged with $80 per year as rent for the use of said premises for six years, beginning January 1, 1914, and ending December 31, 1919, and that said rents should be credited at the beginning of each year on the said judgment of the said defendant herein.

"And the court after striking said balance finds that there is the sum of $309 due the said defendant by the said plaintiffs."

The land was originally owned by Josephine B. Latimer. June 30, 1923, to secure an indebtedness of $421.60, owing by O. S. Latimer, her husband, to J. A. Rollow of Wynnewood, joined by her husband, she executed a warranty deed to J. A. Rollow. Rollow at the time executed a written agreement by which he agreed to reconvey if the indebtedness was paid on or before the 15th day of November, 1913. Just before this indebtedness became due payment was being demanded, and the husband, O. S. Latimer, went to Paris, Texas, to try to borrow from his uncle, D. F. Latimer, the money to pay that indebtedness. But the husband and the uncle were dead at the

time of the trial, and the only evidence as to what occurred at the time is that of W. D. Latimer, son of the deceased D. F. Latimer. But pursuant to some arrangement between O. S. and D. F. Latimer, J. A. Rollow, in consideration of $25 paid by D. F. Latimer, executed a quitclaim deed to J. F. Latimer. The payment and transfer were made by Rollow preparing and executing a quitclaim deed and drawing draft on D. F. Latimer, which was by him paid. December 31, 1914, D. F. Latimer, being old and infirm, divided his real estate among his children and in that division, in consideration of "$5 and love and affection" as expressed in the deed, executed to Cynthia Latimer, his daughter, and the plaintiff in error in this case, his warranty deed to the land involved. January 20, 1915, at the request of Walter Latimer, brother of Cynthia Latimer, and an attorney at law then practicing law at Sulphur, and upon his representation that his sister was dissatisfied with the quitclaim deed from Rollow to her father, the plaintiff, Josephine B. Latimer, joined by her husband, O. S. Latimer, executed and delivered to Cynthia Latimer their warranty deed for the consideration, as expressed in the deed, of $10. There is no evidence that the $10 was actually paid but the evidence is reasonably conclusive that the deed was executed for the sole purpose of relieving the mind of Cynthia Latimer of any anxiety occasioned by the quitclaim deed from Rollow to her father, and without any other consideration.

The plaintiff in error contends (1) that the deed to Rollow was intended as an actual conveyance of the land and not intended as a mortgage; (2) that her father had no notice that the deed to Rollow was intended as a mortgage, and that the deed to him was not intended as a mortgage; (3) that she took the deed from her father in good faith, without any knowledge that it was contended that either of the former deeds was intended as a mortgage; and (4) that any and all defects in her title, if there were any, were cured by the warranty deed from Josephine and O. S. Latimer of January 20, 1915.

1. It has been so often held by this court that it might be recognized as the settled law of this state that a deed, absolute in form, if given to secure the payment of money and intended as a mortgage will be recognized as a mortgage and not as a sale. Voris v. Robbins, 52 Okla. 671, 153 Pac. 120; Worley v. Carter, 30 Okla. 642, 121 Pac. 670; McKean v. McLeod, 81 Okla. 77, 196 Pac. 935; Renos v. Green, 88 Okla. 169, 212 Pac. 755.

We think the deed to Rollow was a mortgage as much so as if written in the form of a mortgage. On this point there is no conflict of evidence. Plaintiff in error contends that the evidence shows that it was the intention of the parties that the deed was to become absolute if the debt was not paid by the 15th day of November. Such may have been the intention of the parties but we think that would make it no less a mortgage; but the evidence is conclusive that Rollow did not want the land: that he wanted the money and the deed was taken only for security, and when the note became due. he insisted upon payment.

2. As to the quitclaim deed from Rollow to D. F. Latimer, the evidence is conflicting. As above stated, both O. S. Latimer and D. F. Latimer were dead at the time of the trial, and any conclusion reached must be based upon the testimony of W. D. Latimer and the circumstances surrounding the transaction. Plaintiff offered in evidence at the trial what purported to be a written agreement signed by D. F. Latimer, bearing date the same day as the deed.

According to the terms of this purported agreement D. F. Latimer undertook to reconvey upon the payment of the $525. It is contended that it was a forgery, and a number of witnesses testified that it was not the signature of D. F. Latimer. The original instrument and certain other instruments bearing the signature of D. F. Latimer are included in the case made for comparison. No doubt the jury and the trial court accepted it as the signature of D. F. Latimer and we are unable to say that it was not his signature. The evidence was conflicting and we cannot say they reached a wrong conclusion. But, independent of this purported agreement to reconvey, we think the evidence clearly shows the deed from Rollow was accepted with full knowledge on the part of D. F. Latimer that Rollow held the land to secure the payment of money. W. D. Latimer, a son of D. F. Latimer, brother of the plaintiff in error, and a witness for defendant, testified that he was present and heard the conversation between O. S. and D. F. Latimer. He testified on that subject as follows:

"A. He (O. S. Latimer) came to Paris and always came to my house and put up with me and after supper that night we went to where father lived and he struck my father to borrow $525. My father refused; told him that he wouldn't loan the -$525; that he owed more now than he could pay and also I think began to cry and after father refused to loan the money by telling

him he owed more than he wanted him to owe, he turned around and said 'Uncle Dan, I will deed you this land for the $525, rather let you have it than let the other fellow have it.' Q. Did your father accept that? A. My father, yes, he accepted it. Q. He told him he would buy the land for $525? A. Yes, sir."

While the evidence, if standing alone, would show that D. F. Latimer intended it as a purchase and not a loan, it likewise shows that Josephine B. Latimer still retained an interest in the land. That clearly appears from the statement of the witness that:

"He (O. S. Latimer) turned round and said 'Uncle Dan, I will deed you this land for $525, rather let you have it than let the other fellow have it.'"

Following that statement D. F. Latimer accepted a quitclaim deed from Rollow. While the quitclaim deed conveyed all the interest of Rollow it could not convey more. Rollow's interest was that of a mortgagee only, and the quitclaim deed could be no more than an assignment of the mortgage, unless the grantee accepted it without notice that Rollow's interest was that of a mortgagee. While D. F. Latimer may have thought, and no doubt did, that he was getting the land for $525, the fact remains that the records showed that Josephine B. Latimer was the owner of the land when the conveyance was made to Rollow and he knew that she and her husband claimed the right to pay Rollow and save the land.

We think that was sufficient notice that Rollow could not, by quitclaim deed, convey to him a title free from that claim.

1. The conveyance to Cynthia Latimer was a gift from her father and not a sale, and she, therefore, held the same title as her father. In law, under the deed from her father, she held as mortgagee.

4. This brings us to the consideration of the warranty deed from Josephine B. Latimer and O. S. Latimer to Cynthia Latimer of January 20, 1915. There is no claim that any consideration was paid for that conveyance. The witnesses agreed in their testimony that it was executed at the request of Walter Latimer, made upon the ground that his sister was dissatisfied with the quitclaim deed from Rollow to her father, and the deed was executed for that reason. But there the agreement of the witnesses ends and the sharp conflict begins. Josephine B. Latimer and her daughter testified that the deed was given on the assurance of Walter Latimer, who was representing his sister, that she would carry out any agreement made by her father and

would reconvey when the money was paid. That is denied by Walter Latimer who claimed that it was understood to be a conveyance perfecting the title in Cynthia Latimer. Other witnesses testified as to statements made by Josephine B. Latimer which would indicate that at the time she considered Cynthia Latimer the owner, while other witnesses corroborate her testimony. The evidence as to what representations were made by Walter Latimer to secure the deed is conflicting and cannot be reconciled. In our attempt to weigh this evidence we have been unable to reach any satisfactory conclusion adverse to that of the judge and jury who had the witnesses before them. We think there was sufficient evidence to sustain the verdict and findings of the court.

The evidence is conclusive that the deed to Rollow was given to secure the payment of money and for no other purpose; that D. F. Latimer accepted the quitclaim deed from Rollow with full knowledge of the conditions of the deed to Rollow, and that the deed to Cynthia Latimer from her father was for no other consideration than that of love and affection as expressed in the deed. She was not a purchaser for value. As to the warranty deed of January 20, 1915, the evidence is conflicting, but it was executed at a time when the husband was in the last stage of Bright's disease to which he succumbed within a few weeks, and it is not claimed that their attention was called to the fact that such deed might change the status of Cynthia Latimer from mortgagee to that of absolute owner.

Some complaint is made of the act of the trial court in modifying the findings of the jury, but such modifications were in favor of the plaintiff in error and she cannot complain.

We think the verdict and finding of the court are sustained by the evidence and the judgment should be affirmed.

By the Court: It is so ordered.