HARRIS v. FIRST NAT. BANK OF BOKCHITO.

No. 778, Ind. T.   Opinion Filed May 15, 1908.

(95 Pac. 781.)

**APPEAL—Review—Theory of Case—Attempt to Change.** The right of appellant to recover was properly submitted to the jury on his own theory. The jury finding against him on the theory relied upon, he will not be permitted to change front in this court and claim the right to recover upon some other theory.

(Syllabus by the Court.)

*Appeal from the United States Court for the Central District of the Indian Territory, at Durant; before Thomas C. Humphrey, Judge.*

Action by the First National Bank of Bokchito against W. R. Harris. Judgment for plaintiff, and defendant appeals. Affirmed.

*W. T. Sprowls* and *Robert Crockett*, for appellant.
*Chas. A. Phillips* and *Williams & Utterback*, for appellee.

KANE, J. This was a suit in replevin commenced by the appellee, the First National Bank of Bokchito, as plaintiff below, against the appellant, defendant below, to recover certain specific personal property for the purpose of selling the same under a power of sale contained in a chattel mortgage executed by B. F. Clark to secure payment of a promissory note made by said Clark and payable to the appellee.

The appellant admits the execution of the note and mortgage, and that the same were unpaid, but, to defeat recovery, testified that before the execution of the note and mortgage, to wit, on the 14th day of January, 1904, B. F. Clark and Deputy Marshal Stacey came to his place of business and asked him to go on a bond for Clark that Clark might retain possession of the mules and wagon in controversy. The appellant further testified: That at first he refused to go on the bond, but that after two days Clark induced him to sign it and the property was released. The amount of the bond was $91.95 against the mules and $17.60 costs. That he signed the bond under the express agreement that Clark should sell and turn over to him the two mules and wagon, and that the appellant was to take them and hold and pay over the purchase money and costs and give Clark the privilege to purchase the mules and wagon back in the fall on payment of the sum paid out on account of the bond and $25 which Clark was to pay the appellant as a fee. The appellant further testified that Clark took the bond after he signed it and went after the property, and the next day brought the mules and wagon to his place of business in Boswell, and he examined them and took actual possession of them. He told Clark then and there that he would take them and give him up his note of $25, which he did

at that time, to wit, on the 15th day of January, 1904. On the —— day of June, 1904, he testified that he paid the purchase price of the mules and the costs, which all amounted to $109.55. He further testified that he knew it was necessary for him to purchase the property outright and take actual possession in order to make it a valid trade under the law, and that he did purchase it in January, as above set out. The appellant then told Clark that he would lend him the mules and wagon to enable him to plant his crop, but that they were to be his (the appellant's) property, and subject to his control, and Clark agreed to all this. The appellant further testified:

"I did not buy the property for speculation, but only to hold it, and expected to sell it back to Clark if he raised the necessary money. * * * I had possession of the property, and I loaned them back to Clark before the mortgage in question was executed. After Clark had left the country I again took possession of the mules and was in peaceable possession of them at Boswell when the First National Bank of Bokchito filed their suit in replevin against me."

It is clear, from the above excerpts from the testimony of the appellant, that he bases his right to the possession of the property in controversy upon an absolute purchase from Clark, the owner, prior to the execution and deliverance of the note and mortgage by Clark to the appellee. There was evidence introduced reasonably tending to contradict the evidence adduced as to the purchase of the property by the appellant prior to the execution of the note and chattel mortgage by Clark to the appellee. Upon the issues thus joined and the evidence adduced the case was tried to a jury, and a verdict returned in favor of the defendant, upon which judgment was duly entered. The appellant brings the case here for review, assigning several errors, most of them, however, being based upon alleged erroneous instructions to the jury and the refusal of instructions requested by the appellant.

The specific grounds of complaint will be more apparent by quoting from the brief of counsel for appellant. He states them to be as follows:

"To emphasize this·point, and in order to bring our contention clearly before this court, we quote from the instructions to the jury delivered by the learned judge. On page 21 of the record, which contains the major portion of the charge of the court, the trial judge uses this language: 'If the acts ·and doings of Clark and Harris, the trade made, or the contract for any was made, was to secure a debt, then the plaintiff should recover.' Also on the same page the learned judge uses this language: 'I want to state that nothing but an absolute sale would give the property to Harris. An understanding that the mules and wagon would stand good did not carry title, and, unless the title passed, the bank must recover.' Also on the same page of the record the learned judge used this further language: 'Now there is a question for you to determine from the evidence in this case. Whether a sale from Clark to Harris there, or whether an agreement that the property *should stand good and be a security to Harris,* and that Harris was to be reimbursed but the property was to belong to Clark. In other words, *if it was only to secure a debt,* the mortgage of the plaintiff would be superior to any title that Harris would get.' We think the language quoted clearly demonstrates the fact that it was .the opinion of the trial judge that Harris could acquire the title to and the right to the possession of the property in question only upon the theory that the transaction between appellant and Clark was an absolute sale of the chattel; that an attempt on the part of these individuals to invest such transactions with the character of a conditional sale or a chattel mortgage was abortive and ineffectual on the ground that every conditional sale or chattel mortgage to be valid must be in writing. Such, at least, was the effect of the charge of the trial judge to the jury, whether we have correctly stated his theory or not."

We agree with counsel that the effect of the instructions was that Harris could acquire possession ·of the property upon the theory *only* that the transaction between appellant and Clark was an absolute sale, but we do not concur in his statement that such instructions were erroneous. The appellant testified on the witness stand that he purchased the property from Clark; that he knew it was necessary for him to purchase the property outright and take active possession in order to make a valid trade under the law. There was not the slightest intimation in his evidence

to indicate that his transactions with Clark in relation to this property constituted a conditional sale or a verbal chattel mortgage. The right of appellant to recover was properly submitted to the jury on his own theory. The jury finding against him on the theory relied upon, he will not be permitted to change front in this court and claim the right to recover upon some other theory. *Overstreet et al. v. Citizens' Bank,* 12 Okla. 383, 72 Pac. 379.

There is nothing in the record going to show that the court below rejected the conditional .sale or verbal mortgage theory on the ground that such transactions to be valid must be in writing or that plaintiff's counsel took that view of the case. They certainly did not in this court, as the following quotation from their brief plainly shows:

"There is no evidence of a verbal mortgage in the record. The charge requested by the appellant on such theory was therefore properly refused."

As was stated by learned counsel for the appellee in their brief, "there was evidence on the question of a sale *vel non,* and the court properly submitted that issue, and the issue being properly submitted, and the jury having decided against the appellant, they are concluded by the verdict of the jury."

The other errors complained of are predicated upon the theory that the appellant had a verbal mortgage on the property in controversy, which, by reason of irregularities in the acknowledgment of the mortgage of the appellee, and the use of greater diligence by the appellant in acquiring possession of the chattels, coupled with an equity which was at least equal to that of appellee, gave him a title to the chattels, which was superior to that of the bank. We cannot agree with learned counsel for appellant on this proposition. The appellant bases his right to retention of the property on his absolute ownership of it prior to the execution and delivery of the mortgage to the bank, and when that claim failed he is not entitled to have his theory of verbal mortgage considered for the first time in the Supreme Court.

Finding no material error in the record, it follows that the judgment of the court below must be affirmed.

Dunn, Hayes, and Turner, JJ., concur; Williams, C. J., not sitting.