CHECOTAH *et al.* v. HARDRIDGE *et al.*

No. 1196.  Opinion Filed November 14, 1911.

Rehearing Denied May 7, 1912.

(123 Pac. 846.)

**APPEAL AND ERROR**—Review—Theory of Case. A party will not be permitted to present and have his cause tried in the lower court on the theory that the Creek law applies, and, on review in this court, to change front, and have the same considered on the theory that the Arkansas law applies, but will be held to the theory under which the cause was tried in the lower court, except in cases involving the lack of jurisdiction of the trial court.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*John Caruthers, Judge.*

Action by Eli Hardridge and others against Louisiana Checotah and others. Judgment for plaintiffs, and defendants bring error.  Affirmed.

*Wm. L. Lawrence* and *N. A. Gibson* (*H. C. Thurman* and *Moore & Noble,* on the brief), for plaintiffs in error.

*J. C. Stone* and *F. F. Lamb* (*T. H. Owen,* on the brief), for defendants in error.

WILLIAMS, J.  This proceeding in error is to review the action of the trial court in rendering judgment upon an agreed statement of facts, which are as follows:

"First.  That Sallie Hardridge was a citizen of the Creek Nation, and that Younger Hardridge, Lewis Hardridge, Narcissa Hardridge, Shawnee Hardridge, Bud Hardridge, and Jennie Hardridge were the only brothers and sisters of Sallie Hardridge. That her brothers, Lewis and Bud, and her sisters, Narcissa and

Jennie, did not marry, and died intestate before the enrollment of Creek citizens by the Dawes Commission to the Five Civilized Tribes. That her brothers, Younger and Shawnee, married, and that Younger and his wife, Lucy, and Shawnee and his wife, Julie, died, intestate, prior to 1900, and that Younger left surviving him one son, Eli, and Shawnee died, leaving surviving him one son, Lona, who was of three-quarter Indian blood as shown by the rolls of the Five Civilized Tribes, both of whom are now living, and these two are the only surviving relatives by blood of their aunt, Sallie Hardridge, who died as Sallie Towne.

"Second. That the father and mother of said Sallie Hardridge died prior to the death of said Sallie Hardridge, and prior to the enrollment of citizens of the Creek Nation.

"Third. That prior to the enrollment of the citizens of the Creek Nation Sallie Hardridge was married to one James Towne, Sr., a citizen of the Creek Nation, who at the time of said marriage was a widower with two children, to wit, James Towne, Jr., and Emma Towne.

"Fourth. That there was duly allotted to James Towne, Sr., as his share in severalty of the lands of Creek Nation, the N. E. ¼ of section No. twenty-seven (27), township fifteen (15) N., range fourteen (14) E. That a deed has been duly executed and issued therefore in accordance with law.

"Fifth. That there was duly allotted to James Towne, Jr., as his share in severalty of the lands of the Creek Nation the N. W. ¼ of section No. twenty-seven (27), township fifteen (15) N., of range fourteen (14) E. That a deed has been duly executed and issued therefor in accordance with law.

"Sixth. That there was allotted to Emma Towne as her share in severalty of the lands of the Creek Nation the S. E. ¼ of section twenty-two (22), township fifteen (15), range fourteen (14) E. That a deed has been duly executed and issued therefor in accordance with law.

"Seventh. That Emma Towne and James Town, Jr., died, intestate, without issue and unmarried during the lifetime of James Towne, Sr.

"Eighth. That on the 3d day of March, 1902, James Towne, Sr., died, intestate, without issue by his wife, Sallie, leaving surviving him only his legally wedded wife, Sallie Towne, nee Hardridge, and a niece, Louisiana Checotah.

"Ninth. That on the 24th day of February, 1903, Sallie Towne, nee Hardridge, died intestate, without issue, leaving

surviving her Eli Hardridge and Lona Hardridge as the only kin by blood.

"Tenth. That on the 18th day of June, 1906, Lona Hardridge and his wife, Bessie Hardridge, who is also a mixed blood, as shown by the rolls of the Five Civilized Tribes, executed to the Pioneer Land Company of Mounds, Ind. T., which company was authorized to acquire and purchase lands in the Indian Territory, their good and sufficient warranty deed to all their right, title, and interest in and to the lands hereinbefore described.

"Eleventh. That thereafter, to wit, on the 10th day of July, 1906, the Pioneer Land Company, of Mounds, Ind. T., made and executed to F. F. Lamb, of Okmulgee, Ind. T., it being authorized by law so to do, its quitclaim deed to one-half interest in and to all of their right, title, and interest in and to the lands above described."

In the lower court Eli Hardridge, F. F. Lamb, and the Pioneer Land Company originally were plaintiffs, and Louisiana Checotah defendant. After her answer was filed, F. B. Severs was made a defendant, adopting same. By agreement the Pioneer Oil & Gas Company was also made defendant in said action, and its claim was submitted upon the agreed statement of facts hereinbefore set out, and upon the pleadings.

Upon January 30, 1909, the decree was rendered, in part as follows:

"First. That Sallie Hardridge was a citizen of the Creek Nation, and that Younger Hardridge, Lewis Hardridge, Narcissa Hardridge, Shawnee Hardridge, Bud Hardridge, and Jennie Hardridge were the only brothers and sisters of Sallie Hardridge. That her brothers, Lewis and Bud, and her sister, Narcissa and Jennie, did not marry, and died intestate before the enrollment of Creek citizens by the Dawes Commission to the Five Civilized Tribes. That her brothers, Younger and Shawnee, married, and that Younger and his wife, Lucy, and Shawnee and his wife, Julie, died intestate, prior to 1900, and that Younger left surviving him one son, Lona, who was of three-quarter Indian blood, as shown by the rolls of the Five Civilized Tribes, both of whom are now living, and these two are the only surviving relatives by blood of their aunt, Sallie Hardridge, who died as Sallie Towne.

"Second. That the father and mother of said Sallie Hard-ridge died prior to the death of said Sallie Hardridge, and prior to the enrollment of citizens of the Creek Nation.

"Third. That prior to the enrollment of the citizens of the Creek Nation Sallie Hardridge was married to one James Towne, Sr., a citizen of the Creek Nation, who at the time of said marriage was a widower with two children, to wit, James Towne, Jr., and Emma Towne.

"Fourth. That there was duly allotted to James Towne, Sr., as his share in severalty of the lands of the Creek Nation, the N. E. ¼ of section No. twenty-seven (27), township fifteen (15) N., of range fourteen (14) E. That a deed has been duly executed and issued therefor in accordance with law.

"Fifth. That there was duly allotted to James Towne, Jr., as his share in severalty of the lands of the Creek Nation, the N. W. ¼ of section No. twenty-seven (27), township fifteen (15) N., of range fourteen (14) E. That a deed has been duly executed and issued therefor in accordance with law.

"Sixth. That there was allotted to Emma Towne as her share in severalty of the lands of the Creek Nation the S. E. ¼ of section twenty-two (22), township fifteen (15), range fourteen (14) E. That a deed has been duly executed and issued therefor in accordance with law.

"Seventh. That Emma Towne and James Towne, Jr., died intestate, without issue and unmarried during the lifetime of James Towne, Sr.

"Eighth. That on the 3d day of March, 1902, James Towne, Sr., died intestate, without issue by his wife Sallie, leaving surviving him only his legally wedded wife, Sallie Towne, nee Hardridge, and a niece, Louisiana Checotah.

"Ninth. That on the 24th day of February, 1903, Sallie Towne, nee Hardridge, died, intestate, without issue, leaving surviving her Eli Hardridge and Lona Hardridge as the only kin by blood.

"Tenth. That on the 18th day of June, 1906, Lona Hardridge and his wife, Bessie Hardridge, who is also a mixed blood, as shown by the rolls of the Five Civilized Tribes, executed to the Pioneer Land Company, of Mounds, Ind. T., which company was authorized to acquire and purchase lands in the Indian Territory, their good and sufficient warranty deed to all of their right, title, and interest in and to the lands hereinbefore described.

"Eleventh. That thereafter, to wit, on the 10th day of July, 1906, the Pioneer Land Company of Mounds, Ind. T., made and

executed to F. F. Lamb, of Okmulgee, Ind. T., it being authorized by law so to do, its quitclaim deed to one-half interest in and to all of their right, title, and interest in and to the lands above described.

"Twelfth. That Emma Towne and James Towne, Jr., were duly enrolled citizens of the Creek Nation, and that both died at a time when, under the law then in force, their father, James. Towne, Sr., was their sole heir at law.

Thirteenth. That Louisiana Checotah and Eli Hardridge are full-blood Creek Indian citizens of the Creek Nation, and that. Lona Hardridge and his wife, Bessie, are citizens of the Creek Nation.

"Fourteenth. That the Pioneer Oil & Gas Company now is, and since June 9, 1907, has been, a body corporate under the laws of the late Indian Territory, and authorized to lease lands. for mining for oil and gas.

"Fifteenth. That defendant Louisiana Checotah, on June 10, 1907, executed three several oil and gas leases, each in quintuplicate, in the manner and form required by the rules and regulations of the Secretary of the Interior, for the term beginning June 10, 1907, and ending June 9, 1922, to the defendant Pioneer Oil & Gas Company, one of said leases being to said N. E. ¼ of section No. twenty-seven (27), township fifteen (15) N., of range fourteen (14) E., one being to said N. W. ¼ of section No. twenty-seven (27), township fifteen (15) N., of range fourteen (14) E., and one being to said S. E. ¼ of section twenty-two (22), township fifteen (15) N., of range fourteen (14) E., all in the Creek Nation, Ind. T. That said leases were duly filed in the office of the United States Indian Agent Union Agency, Muskogee, Ind. T., on June 12, 1907.

"Sixteenth. That after August 8, 1907, the defendant, F. B. Severs (sic) Louisiana Checotah conveyed all her title and interest remaining in said three tracts of land to defendant F. B. Severs, but that said F. B. Severs took subject to said three department oil and gas leases executed on June 10, 1907.

"Seventeenth. That at the death of Emma Towne and of James Towne, Jr., the said lands allotted to them, both homestead and surplus, ascended to James Towne, Sr., who took a fee-simple estate in said lands.

"Eighteenth. That at the death of James Towne, Sr., on March 3, 1902, said lands allotted to him, both homestead and surplus, descended to Sallie Towne and Louisiana Checotah, each.

of whom took an undivided one-half interest in said lands in fee simple.

"Ninteenth. That at the death of James Towne, Sr., on March 3, 1902, said lands allotted to Emma Towne and to James Towne, Jr., and which had been inherited by James Towne, Sr., at the death of said Emma Towne and James Towne, Jr., both homestead and surplus, descended to Sallie Towne and Louisiana Checotah, each of whom took an undivided one-half interest in said lands in fee simple.

"Twentieth. That at the death of Sallie Towne on February 24, 1903, her said undivided one-half interest in all of the land in said three allotments of James Towne, Sr., Emma Towne, and James Towne, Jr., both homestead and surplus, descended to Eli Hardridge and Lona Hardridge, each of whom took an undivided one-fourth interest in fee simple in all of said lands.

"Twenty-First. That the warranty deed executed on June 18, 1906, by Lona Hardridge and his wife, Bessie Hardridge, to the Pioneer Land Company, of Mounds, Ind. T., conveyed all the right, title, and interest of said grantors, to wit: An undivided one-fourth interest in and to said land, both homestead and surplus, allotted to James Towne, Sr., Emma Towne, and James Towne, Jr., and that by said warranty deed said company took an undivided one-fourth interest in and to all of said three tracts of land in fee simple.

"Twenty-Second. That the quitclaim deed executed on July 10, 1906, by the Pioneer Land Company of Mounds, Ind. T., to F. F. Lamb of Okmulgee, Ind. T., to an undivided one-half interest in and to all the right, title, and interest of said company in and to all of said lands both homestead and surplus in fee simple (*sic*).

"Twenty-Third. That the three several oil and gas department leases executed on June 10, 1907, by Louisiana Checotah to Pioneer Oil & Gas Company to said lands allotted to James Towne, Sr., Emma Towne, and James Towne, Jr., were binding upon the one-half interest of said Louisiana Checotah in said lands by that said interests of Eli Hardridge (*sic*). The Pioneer Land Company and F. F. Lamb were not bound by the execution of said lease.

"Twenty-Fourth. That the warranty deed executed by Louisiana Checotah after August 8, 1907, to F. B. Severs, conveyed all her right, title, and interest in and to said lands allotted to James Towne, Sr., Emma Towne, and James Towne, Jr., to wit, an undivided one-half interest in fee simple subject to said three

oil and gas department leases, executed on June 10, 1907, by said Louisiana Checotah to Pioneer Oil & Gas Company, and that said F. B. Severs took subject to said leases.

"Twenty-Fifth. That the title to said three tracts of land is now as follows: F. B. Severs owns in fee simple an undivided one-half interest, subject to° said three oil and gas department leases, heretofore mentioned, and that said leases would bind lands set apart to said Severs in partition. Eli Hardridge owns in fee simple an undivided one-fourth interest. The Pioneer Land Company, Mounds, Okla., owns in fee simple an undivided one-eighth interest. F. F. Lamb, of Okmulgee, Okla., owns an undivided one-eighth interest in fee simple.

"It is therefore ordered that partition of said lands be made according to the interests of the respective parties, as decreed herein, and D. M. Smith, H. B. Martin, and Watt A. Jolly, all of Okmulgee county, Okla., be and they are hereby appointed, commissioners, and are directed to make partition among the parties according to their respective interests if such partition can be made without manifest injury, and, if such partition cannot be made, said commissioners shall make a valuation and appraisement of said property. Said commissioners shall make a report of their proceedings to the court forthwith."

In the brief of counsel for the plaintiff in error it is said:

"It is conceded by all the parties in this case that at the death of James Towne, Jr., and Emma Towne, their father, James Towne, Sr., was their nearest relation, and that the Creek law of descent and distribution governed the devolution of title to their allotments in the Creek Nation, and that he, as their father, was their sole heir. It is also conceded that the plaintiffin error Louisiana Checotah was the nearest relation of James Towne, Sr., at the date of his death on March 3, 1902, and as such inherited all of the land of which he died seised, save and except such portion thereof as was inherited by his surviving widow, Sallie Towne. There is no controversy over the fact that the defendants in error have acquired all of the right and title of the said Sallie Towne in the lands inherited by her from her deceased husband, James Towne, Sr. The plaintiff in error Pioneer Oil & Gas Company claims under an oil and gas mining lease executed to it by Louisiana Checotah, covering all of her interest in the land in controversy, and the plaintiff in error F. B. Severs, who is in reality the principal party in interest among the plaintiffs in error, claims to have acquired by warranty deed from Louisiana Checotah all of her interest in the

said land so inherited by her from James Towne, Sr., subject only to the rights of the Pioneer Oil & Gas Company, as acquired under its lease.   About these claims there is no controversy whatever."

In said brief it is further recited that:

"The plaintiffs in error contend that at the death of James Towne, Sr., his own allotment descended according to the Creek law of descent and distribution, and that Louisiana Checotah inherited one-half as his nearest relation, and the remaining half was inherited by his widow, Sallie Towne.   They contend, however, that as to the allotments of James Towne, Jr., and Emma Towne, which had been previously inherited at their death by their father, James Towne, Sr., the Creek law of descent and distribution did not govern the descent of these two allotments at the time of the death of James Towne, Sr., but that their descent was governed by the laws of the United States adopted from the state of Arkansas, as contained in chapter 49 of Mansf. Dig. of the Statutes of Ark., which law was the law of the forum at the time of the death of James Towne, Sr., and that consequently Sallie Towne, the surviving widow of James Towne, Sr., inherited no interest in these two allotments, and acquired no right or title to the same, but at the death of her husband, James Towne, Sr., acquired a dower interest therein, which ceased at the date of her death on February 24, 1903, and that consequently the defendants in error have acquired no interest in the allotment of James Towne, Jr., and Emma Towne, by virtue of the conveyances to them from the heirs of Sallie Towne.   So far as the plaintiffs in error, Louisiana Checotah and F. B. Severs, are concerned, there is no other controversy whatever in this cause."

The case, however, seems to have been tried in the lower court upon the theory that the Creek law applied to the entire devolution, and, if so, the parties will not be permitted to change front in this court, and take a new hold on another theory.   This has been the uniform holding of this court. *Harris v. First National Bank of Bokchito,* 21 Okla. 189, 95 Pac. 781; *Queen Insurance Co. v. Cotney et al.,* 25 Okla. 125, 105 Pac. 651; *Wattenbarger v. Hall,* 26 Okla. 815, 110 Pac. 911; *St. Louis & S. F. R. Co. v. Key,* 28 Okla. 769, 115 Pac. 875; *Perry Water, Light & Ice Co. v. City of Perry,* 29 Okla. 593, 120 Pac. 582. The answer of the defendants recites:

"Further answering, the defendants deny that the allotments of James Towne, Sr., James Towne, Jr., and Emma Towne are held in common by defendant and plaintiffs herein as alleged in complaint, but alleges that upon the death of James Towne, Sr., defendant became seised in fee of an undivided one-half interest in and to the allotments of James Towne, Jr., James Towne, Sr., and Emma Towne, and that, upon the death of said Sallie Towne, the said defendant became seised of and the owner in fee of the remaining one-half interest in and to said allotments, and was therefore seised in fee of the whole of said allotments upon the date of the death of said Sallie Towne."

The Pioneer Oil & Gas Company also ratified this answer. That allegation, together with the other averments and allegations in the answer, are made a part of the agreed statement of facts.

In *Ohio & Mississippi Ry. Co. v. McCarthy*, 6 Otto, 258, 24 L. Ed. 693, Mr. Justice Swayne, speaking for the Supreme Court of the United States, said:

"The question made by the company upon the Sunday law of West Virginia does not, in our view, arise in this case. We have already shown that the defendant proved upon the trial that it was impossible to forward the cattle on Sunday for want of cars. And it is fairly to be presumed that no other reason was given for the refusal at that time. It does not appear that anything was then said as to the illegality of such a shipment on the Sabbath. This point was an afterthought, suggested by the pressure and exigencies of the case. Where a party gives a reason for his conduct·and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to amend his hold. He is estopped from doing it by a settled principle of law. *Gould v. Banks*, 8 Wend. [N. Y.] 562 [24 Am. Dec. 90]; *Holbrook v. Wight*, 24 Wend. [N. Y.] 169 [35 Am. Dec. 607]; *Everett v. Saltus*, 15 Wend. [N. Y.] 474; *Wright v. Reed*, 3 T. R. 554; *Duffy v. O'Donovan*, 46 N. Y. 223; *Winter v. Coit*, 7 N. Y. 288 [57 Am. Dec. 522]."

It is clear that, under the issues and agreed statement of facts as made in the trial court, it was upon the theory that the Creek law applied to the entire devolution. So the question made by the plaintiffs in error upon the application of the

Arkansas statute as to descent and distribution does not arise in this proceeding.

The judgment of the lower court is affirmed.

All the Justices concur.