## MORRISON v. KROUCH.

No. 19032. Opinion Filed Sept. 10, 1929.

Rehearing Denied Feb. 25, 1930.

Commissioners' Opinion, Division No. 1.

W. R. Withington, for plaintiff in error.

C. Guy Cutlip, Thos. J. Horsley, and K. H. Lott, for defendant in error.

REID, C. Max Krouch, as plaintiff, filed a suit in the district court of Seminole county against Minnie E. Morrison and Russell Morrison to foreclose a mortgage given by James W. Morrison to plaintiff, dated August 30, 1920, on 40 acres of land in said county, to secure a note between the same parties for $475 and of the same date as the mortgage, which note was due August 30, 1925, and bore 10 per cent. interest from date. The petition alleged that after the mortgage was made the mortgagee had conveyed the land to the defendants subject to the mortgage. No personal judgment was sought, but plaintiff asked that his mort-

gage be foreclosed to satisfy the indebtedness subject to an undivided one-half interest in the oil, gas, and mineral rights then underneath the land, or that might be found therein, as the same was conveyed to him by a deed of James W. Morrison made on the 30th day of August, 1920.

James W. Morrison was permitted to intervene in the case upon a petition alleging that he was the owner, of the real title to said land in that the deed he gave to the defendants Minnie E. Morrison and Russell Morrison was, in fact, a mortgage on the land to secure an indebtedness then amounting to $281, which he owed the grantees in the deed; and in answering the petition of the plaintiff and pleading over against him, he alleged:

"Your intervener further states that on August, 30, 1920, he went to the office of one Julius Krouch, whose office was in the Security Building in Oklahoma City Okla., and that on said date the said Julius Krouch, who was then and there the agent of the plaintiff in this action, Max Krouch, and acting for him, agreed to make this intervener a loan of $475 and that at said time and place this intervener executed the note and mortgage set out in plaintiff's petition. That after the execution of said note and mortgage the said Julius Krouch stated to this intervener that the mortgage security was not any too good and that it was his custom to require parties to whom they loaned money to execute a royalty deed to a one-half interest in the mineral rights as additional security; and that thereupon this intervener entered into an oral understanding and agreement with the said Julius Krouch, the agent of the said Max Krouch, the plaintiff herein, that he would execute such a deed to be held as additional security to the mortgage set out in plaintiff's petition, and it was the oral understanding and agreement between this intervener and the said Julius Krouch acting for the said Max Krouch, that said mineral deed to a one-half interest in said mortgage security was only to be a mortgage transaction set out in the plaintiff's petition herein, and that same was to be part and parcel of the same contract; and was to be released and re-deeded to this intervener upon the payment of the money sued for in plaintiff's petition."

And he further pleaded that, in accordance with the oral understanding and agreement and for the sole purpose of further securing the loan and as a part and parcel of the note and mortgage and contract for the loan of the money, he executed a royalty deed to one-half interest in the mineral rights in the land to Max Krouch under which he was claiming to be the owner of said rights in said land; but that said min-

eral deed was in truth and in fact a mortgage. He pleaded that the plaintiff never paid any money or gave any other thing of value to him for said deed and for said reason same was void. He further alleged the mineral deed was obtained by fraud in that when it was signed by him the same was in blank and there were no words therein showing that it was only intended to be a mortgage, but that Julius Krouch, then acting for the plaintiff, promised him that if he would sign the same, he, Julius Krouch, would write into said deed, in substance, the oral agreement they had had to the effect that the deed was only intended as additional security, and was a mortgage and was to be released and redeeded when the mortgage was paid off; that he relied upon the promise of Julius Krouch to write said agreement into said blank form of royalty deed, and in reliance upon said promise he signed the deed and left it with the said Julius Krouch, but that the said Julius Krouch at the time the deed was made had no intention of performing said agreement and caused the same to be recorded in Seminole county without said condition inserted therein. He asked that he be decreed to be the real owner of said land subject only to the mortgage claims of plaintiff and of the defendants Minnie E. Morrison and Russell Morrison; tendered payment of the mortgages; asked that the mineral deed be declared a mortgage, and that upon payment of the debt to the plaintiff, the deed be canceled and the title quieted in him, or that the deed be canceled because of the fraud practiced on him and because there was no consideration for the deed.

The plaintiff for reply to the petition in intervention denied that the mineral deed was intended to be a mortgage and operate as such, denied that the deed had been procured by fraud, and pleaded that it was given for a valuable consideration and was a deed absolute to one-half the oil, gas and mineral rights in the land.

In the answer of the defendants Minnie E. Morrison and Russell Morrison, they admitted that the deed given by James W. Morrison to them was in fact a mortgage as alleged by him.

The case was tried to the court and a judgment was rendered finding the plaintiff's mortgage for $475, interest and attorneys' fees as a first lien on the land, that the deed from James W. Morrison to Minnie E. Morrison and Russell Morrison was a mortgage securing the sum of $281 then due, subject to plaintiff's first lien; and ordered the property sold and the proceeds applied to the liens in accordance with their standing. The court further found that by virtue of the mineral deed, the plaintiff was the absolute owner of an undivided one-half interest in the oil, gas and mineral rights in the land, and ordered that the sale of the land under the mortgage be subject to the plaintiff's rights under the mineral deed.

From that part of the judgment holding that plaintiff was the owner of the oil and gas rights in the land, the intervener, James W. Morrison, appealed.

As to the mineral deed, the issue was stated by stipulation made at the beginning of the trial as follows:

"It is further stipulated and agreed between the parties hereto that the mineral deed executed on the 30th day of August, 1920, which deed was signed by James W. Morrison, the issue is whether or not this deed was executed for a consideration to Max Krouch to be a mineral deed, or was it properly executed, and, if so, is it a mortgage or a deed, and the issue involved for the court to try is whether said mineral deed was given as a conveyance or a mortgage. * * * "

At the conclusion of the evidence the court made the following finding on the question tried:

"The court finds that the mineral deed executed by James W. Morrison to Max Krouch was thoroughly understood by the parties at that time, and it was a conveyance of the mineral rights instead of an instrument for the security of money."

This was excepted to by the intervener, and no further finding was requested.

That part of the journal entry of judgment covering the mineral deed followed the court's finding on the question in this language:

"The court further finds that the mineral deed of August 30, 1920, executed by James W. Morrison to Max Krouch, was intended to be a deed absolute, and that the same was not intended to be additional security or a mortgage as claimed by the said James W. Morrison, and the evidence is insufficient to warrant the court in holding said mineral deed to be a mortgage"

—and directed the sale of the property subject to the rights of the plaintiff under the mineral deed.

Under the pleadings, and the stipulation which seems to have been followed by the trial court, as presenting only one exact issue, the intervener plainly sought to bring the instrument within section 5253, C. O. S. 1921, which is as follows:

"Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such"

—and upon which single issue so made the court held for the plaintiff.

The motion for new trial makes the usual several general assignment of errors, but the only specific assignment is the holding of the court that the instrument was a deed and not a mortgage and the refusal of the court to cancel the deed. The petition in error closely follows the motion for new trial. And the brief of the intervener in stating the assignment of errors groups all of them into three: The first being that the judgment is against the clear weight of the testimony, and the combined substance of the other two is that the court erred in not holding that mineral deed a mortgage and in refusing to cancel the same upon payment of the mortgage.

Now, it is apparent that up to this stage of the proceeding we had the single issue: The intervener contending that the instrument is a mortgage, and the plaintiff saying that it is what it purports on its face to be—a deed.

After stating the assignment of errors in his brief, as we have heretofore mentioned, the intervener thereunder then makes this as his first proposition:

"The mineral deed, being executed at the same time as the mortgage, as a part of the same transaction, and for the same consideration, it is a collateral advantage, in addition to the interest which equity will not permit a lender to obtain, and same constitutes a by-agreement clogging the equity of redemption which equity will not permit."

The proposition has no relation to the theory upon which the deed was assailed in the trial court. It is in the nature of a confession and avoidance. It seems not to deny that the instrument was intended by the parties to actually convey the mineral rights, but says that in law it cannot stand for the reasons: (1) That plaintiff lender would thereby have, as compensation for the money loaned, more than the interest provided for in the note and mortgage; and (2) that the deed fettered intervener's equity of redemption—his right in equity to redeem the land by payment of the mortgage. The argument made and also the authorities cited under this proposition relate to the questions raised by the proposition, and not to the question tried.

It is a well-settled rule that a party to a suit having proceeded in the trial court upon a theory and lost, will not be permitted, upon appeal to this court, to change his base and seek to reverse a case upon a different theory. Harris v. First National Bank of Bokchito, 21 Okla. 189, 95 Pac. 781; Border v. Carribine, 24 Okla. 609, 104 Pac. 906; Duffey v. Scientific American Compiling Department, 30 Okla. 742, 120 Pac. 1088; Smith v. Colson, 31 Okla. 703, 123 Pac. 149; Checotah v. Hardridge, 31 Okla. 742, 123 Pac. 846; Stuart v. Edwards, 84 Okla. 207, 202 Pac. 1032; Oklahoma City v. Coombs, 125 Okla. 194, 257 Pac. 295.

The early case of Harris v. First National Bank, supra, will illustrate the rule. The bank brought replevin against Harris to recover possession of certain personal property for the purpose of selling the same under a chattel mortgage given the bank by one Clark to secure his note. Harris defended in the lower court on the theory that before the bank's mortgage was given, he purchased the property from Clark, and was thereunder in possession. Harris lost and appealed. In this court he tried to reverse the case on the theory that he was entitled to retain possession and defeat the suit by reason of a verbal mortgage on the property given by Clark. The court in the opinion said:

"The appellant bases his right to retention of the property on his absolute ownership of it prior to the execution and delivery of the mortgage to the bank, and when that claim failed, he is not entitled to have his theory of verbal mortgage considered for the first time in the Supreme Court."

It is obvious that this court should follow its long established practice and decline to consider and decide this case upon a theory never presented to the trial court.

We will now consider the question properly before us, whether the instrument was a mortgage or a deed.

We have said that where an instrument on its face is an absolute and unqualified conveyance of realty, or of an interest therein, before a party can have it declared a mortgage, the burden is upon him to establish such fact by cogent, clear, convincing and satisfactory proof. Hunter v. Murphy, 124 Okla. 207, 255 Pac. 561, and authorities there cited.

The question is one of equitable cognizance, and therefore this court will not disturb the judgment unless it is clearly against the weight of the testimony. Prentice v.

Freeman, 76 Okla. 260, 185 Pac. 87; Renas v. Green, 88 Okla. 170, 212 Pac. 755.

The testimony of the intervener substantially followed the allegations of his petition as to the circumstances under which he signed the note, mortgage and mineral deed on August 30, 1920, and there is other evidence tending to establish his claim that the mineral deed was also given in security of the debt covered by the note and mortgage and was to be released upon payment of the debt. The evidence disclosed that there was a judgment against the intervener and some other parties, which judgment operated as a lien on this land; and that he applied to Julius Krouch to assist him in being relieved of said judgment and some other indebtedness. Julius Krouch and the plaintiff here were brothers and partners in business, Max Krouch living at Tecumseh and Julius Krouch in Oklahoma City. The substance of the testimony of Julius Krouch is to the effect that he had an agreement with the intervener that if he would take up the judgment and pay the other indebtedness, a mortgage would be made by the intervener for $475, and also he would execute a deed conveying to them one-half the mineral rights in the land; and he stated that he had a one-half interest in the rights conveyed by the deed. Julius Krouch, in May, 1920, took up the judgment paying therefor $350, and secured an assignment of the judgment to himself. He also paid another debt of $90 for the intervener. He paid some taxes and probably an abstract bill. But the evidence is not clear that he actually paid out more than $475. The land had little value for oil and gas possibilities at the time this transaction took place, and from the testimony, it had little more when this case was tried. There are some circumstances in the record strongly corroborating the testimony of Julius Krouch that the instrument was what it purported to be, a conveyance of one-half the mineral rights in the land. One of these circumstances is the fact that the mortgage for the debt furnished the mortgagee all the security the land was able to give, and this instrument if a mortgage added nothing to the security. But if the instrument were, in fact, a deed, it might have some independent value. The position in which the intervener placed himself in this case before the trial court was, to say the least, unfortunate. He contended (1) that he made a mineral deed which was in fact a mortgage; (2) that he signed the instrument relying upon the other party to insert their verbal contract into it after he had gone; and (3) that

he thereafter made a deed absolute on its face to his mother and brother conveying the property, and that this was in fact a mortgage, and that he therefore held the title to the land with the right to attack the mineral deed he had executed. Looking to his testimony he seemed intelligent, and there is nothing to indicate that he is a person not at all capable of looking after his interest, and one for whom the court ought, in this case, to act to extricate him from his plain contract.

The judgment of the trial court should be affirmed, and it is so ordered.

BENNETT, TEEHEE, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 2 R. C. L. p. 79; R. C. L. Perm. Supp. p. 322. (2) anno. L. R. A. 1916B, 193, et seq.; 19 R. C. L. p. 263; 3 R. C. L. Supp. p. 927; 4 R. C. L. Supp. p. 1263; 5 R. C. L. Supp. p. 1031. See "Appeal and Error," 4 C. J. §2009, p. 701, n. 49; §2870, p. 901, n. 2. "Mines and Minerals," 40 C. J. §553, p. 968, n. 55. "Mortgages," 41 C. J. §115, p. 346, n. 13; §124, p. 357, n. 72.