MAXWELL et al. v. ZENITH LIMESTONE CO.

No. 19237.    Opinion Filed April 8, 1930.

Frank Hickman, for plaintiffs in error.

West, Gibson, Sherman, Davidson & Hull, for defendant in error.

FOSTER, C.    J. H. Maxwell and E. W.

Mead brought this action in the court of common pleas of Tulsa county against the defendant, Zenith Limestone Company, to recover the sum of $442.98. Plaintiffs' petition alleges that on the 21st day of July, 1926, the parties entered into two written contracts, copies of which are attached to plaintiffs' petition. In the first contract the defendant agreed to sell plaintiffs crushed stone at a price of $1.40 per ton, f.o.b. Verdigris, Okla.; and in the second contract agreed to sell and deliver plaintiffs sand at a price of 90 cents per ton, f.o.b. Verdigris, Okla. Except as to material and price, as above set out, the other provisions of the two contracts were identical and were executed upon the same day, and both show upon their face that the crushed stone and sand were to be used by the plaintiffs in the construction of a concrete road known as Federal Project No. 183-B. The sand and rock were to be delivered between the date of the contract and the 31st day of December, 1926, and were to be shipped as nearly as possible to meet the necessities of the work, except that the defendant was not obliged to ship more than eight cars of crushed stone in one day.

The petition further alleges that the defendant breached the contract, and that it was necessary for plaintiffs to go into the open market and buy stone, and that pursuant thereto it made a contract with the Hughes Stone Company at a price of 25 cents per ton more than it agreed to pay the plaintiffs, thereby sustaining a damage of $2,268.58; that the defendant was entitled to a credit against this amount in the sum of $1,825.60 for stone and sand which it furnished prior to the breach of the contract, leaving a balance of $442.98.

The petition further alleges that it was impossible for plaintiffs to secure crushed stone without at the same time contracting with the same company for the sand necessary to complete the job.

To this petition the defendant filed its answer, admitting the execution of the contracts, alleging that they were distinct and independent, denied a breach thereof, but alleged that on or about the 15th of August, 1926, it was unable for a short time to furnish crushed rock because of a broken shaft in the crushing machine of the defendant, but that the same was repaired within about 30 days, and tender of the remaining part, as provided by the contract, was made. By way of cross-petition the defendant alleged that it was at all times willing, able, and ready to deliver the sand as provided for in the second contract, and that the plaintiffs refused to accept the sand and the defendant was damaged in the sum of $650. This, together with the amount set out in plaintiffs' petition, which was due for sand and rock delivered, to wit, $1,825, made a total of $2,475, for which defendant prayed judgment.

At a trial before a jury, the testimony on behalf of the plaintiffs disclosed that they had begun the construction of the road on or about the 15th or 16th of August, 1926; that after the delivery of about 15 cars of rock, the defendant refused to deliver any additional rock, although plaintiffs requested it many times to do so. One of the plaintiffs testified that he went to the office almost every day for ten days or two weeks, and that the defendant continually promised him that he would send additional rock on tomorrow or the next day. However, the plaintiffs admit that defendant told them the reason for nondelivery was because a shaft in their crushing machine was broken and that as soon as it was repaired delivery would be made, which, as defendant stated, would perhaps be on the next day.

It is apparent from the record, however, that no crushed stone of any kind was delivered from about the 15th of August, 1926, until about the 20th of September, and on or about September 1st the plaintiffs made a contract with the Hughes Stone Company for the delivery of all the crushed rock and sand that was necessary for the completion of the federal project. On or about the 20th of September, the defendant offered to continue the shipping of rock and did ship some eight cars, which was refused. About the 1st of September, plaintiffs notified the defendant not to ship any more sand until further orders, and the record is clear that defendant was never afterwards ordered to ship any. The amount paid by the plaintiffs to the Hughes Stone Company exceeded the amount of the contract between plaintiffs and defendants in the sum as alleged in the petition. The plaintiffs offered to prove that it was impossible for them to buy rock either from the Hughes Stone Company, or from the defendant without also contracting to buy the necessary sand, which testimony was refused by the court.

At the close of plaintiffs' evidence, the court sustained a demurrer thereto. It was then agreed that defendant had shipped crushed rock and sand in the sum of $1,825, which had not been paid for. The court then permitted defendant to introduce testi-

mony on its cross-petition. The defendant's evidence showed that it was in the commission business of selling sand and rock; that it entered into the contract as above set out for the sale of sand, and that approximately 6,000 tons of sand were necessary for the completion of the road which the plaintiffs were building, and for which the sand was to be used; that the defendant furnished some 2,800 tons, leaving approximately 4,000 tons which were not purchased from the defendant, but were purchased by the plaintiffs elsewhere; that defendant's commission on the sand was $3.50 per carload of 50 tons each. To this testimony there was no material contradiction, and thereupon, at the close of all the testimony, the court instructed a verdict in favor of the defendant for the sum of $2,103.57, and from this judgment plaintiffs appeal.

Several assignments of error are made, but the two questions presented by this appeal are, in substance, as follows:

First. Whether or not the court was justified in concluding that the plaintiffs had not established their cause of action, or the right to recover damages from the defendant.

Second. Whether or not under the record the defendant was entitled to a judgment for damages on his cross-petition for breach of the contract.

It is first contended by the plaintiffs that the burden is upon the defendant to prove its affirmative defense, and by sustaining the demurrer to plaintiffs' testimony, the court held, in substance, that it was the duty of the plaintiffs to show that the contract was not performed by reason of the broken shaft. Plaintiffs contend that the record is silent as to any affirmative defense, since the defendant introduced no testimony.

The contract for the delivery of the crushed stone provided that "all orders and contracts are accepted subject to contingencies of manufacture and shipping, and other causes beyond seller's control." It is defendant's contention that this provision in the contract was sufficient to relieve the defendant from delivery of rock, where it is shown that the reason for the nondelivery was a broken shaft in the crushing machine. With this contention we agree. We think that the broken shaft in the crushing machine would be such a contingency as was intended by the contract. Certainly, it would be an event which would come without design, forethought, or expectation on behalf of the defendant.

The evidence on behalf of the plaintiffs shows that the agent for the defendant told them that the shaft was broken, and that that was the reason for the nondelivery. One of the plaintiffs so testified, and further stated that he had no reason to doubt the statement of the defendant's agent. Mr. Chandler, a witness for the plaintiffs, testified he knew that the shaft of the defendant's crushing machine was broken. We think it is clear from the evidence of the plaintiffs that the failure to ship the cars of rock was due to the fact that the shaft of the stone crusher belonging to the defendant was broken. Under this state of the record, the rule relied upon by the plaintiffs has no application.

The case of Detroit Edison Co. v. Main Island Creek Coal Co., 295 Fed. 781, relied upon by the plaintiffs as being directly in point, is not controlling. In that case there was no showing by plaintiffs' testimony what was the reason for defendant's failure to deliver the goods as provided in the contract, and the court there properly held that it was defendant's duty and the burden rested upon it to show that the failure to deliver came within the provisions of the contract similar to the one in this contract. But, in the case at bar, where the plaintiffs' testimony so shows, we think it unnecessary for the defendant to introduce any testimony. The other cases relied upon by the plaintiffs only go to support the general rule that, in all cases where a contract is admitted and the defendant seeks to defend against its enforcement by alleging a breach of warranty, or where any other affirmative defense is set up, the burden is upon the defendant to prove it. But such cases are not in point, and the rule contended for by plaintiffs is fully met, where the plaintiffs' testimony discloses the affirmative defense alleged in defendant's answer.

Plaintiffs further contend that where the fact is within the peculiar knowledge of one of the parties to an action, the burden rests upon that party to prove it. Several cases are cited in support of this general proposition. We think this rule is well established. However, if the plaintiffs' evidence shows the fact which is within the peculiar knowledge of the defendant, certainly the purpose of the rule has been fully met.

But if we should assume in this case that the contract had been breached by the defendant without any just cause, still, we think the demurrer to plaintiffs' evidence was properly sustained. It is a well-established rule that damages must be proved as

eral deed was in truth and in fact a mortgage. He pleaded that the plaintiff never paid any money or gave any other thing of value to him for said deed and for said reason same was void. He further alleged the mineral deed was obtained by fraud in that when it was signed by him the same was in blank and there were no words therein showing that it was only intended to be a mortgage, but that Julius Krouch, then acting for the plaintiff, promised him that if he would sign the same, he, Julius Krouch, would write into said deed, in substance, the oral agreement they had had to the effect that the deed was only intended as additional security, and was a mortgage and was to be released and redeemed when the mortgage was paid off; that he relied upon the promise of Julius Krouch to write said agreement into said blank form of royalty deed, and in reliance upon said promise he signed the deed and left it with the said Julius Krouch, but that the said Julius Krouch at the time the deed was made had no intention of performing said agreement and caused the same to be recorded in Seminole county without said condition inserted therein. He asked that he be decreed to be the real owner of said land subject only to the mortgage claims of plaintiff and of the defendants Minnie E. Morrison and Russell Morrison; tendered payment of the mortgages; asked that the mineral deed be declared a mortgage, and that upon payment of the debt to the plaintiff, the deed be canceled and the title quieted in him, or that the deed be canceled because of the fraud practiced on him and because there was no consideration for the deed.

The plaintiff for reply to the petition in intervention denied that the mineral deed was intended to be a mortgage and operate as such, denied that the deed had been procured by fraud, and pleaded that it was given for a valuable consideration and was a deed absolute to one-half the oil, gas and mineral rights in the land.

In the answer of the defendants Minnie E. Morrison and Russell Morrison, they admitted that the deed given by James W. Morrison to them was in fact a mortgage as alleged by him.

The case was tried to the court and a judgment was rendered finding the plaintiff's mortgage for $475, interest and attorneys' fees as a first lien on the land, that the deed from James W. Morrison to Minnie E. Morrison and Russell Morrison was a mortgage securing the sum of $281 then due, subject to plaintiff's first lien; and or-

dered the property sold and the proceeds applied to the liens in accordance with their standing. The court further found that by virtue of the mineral deed, the plaintiff was the absolute owner of an undivided one-half interest in the oil, gas and mineral rights in the land, and ordered that the sale of the land under the mortgage be subject to the plaintiff's rights under the mineral deed.

From that part of the judgment holding that plaintiff was the owner of the oil and gas rights in the land, the intervener, James W. Morrison, appealed.

As to the mineral deed, the issue was stated by stipulation made at the beginning of the trial as follows:

"It is further stipulated and agreed between the parties hereto that the mineral deed executed on the 30th day of August, 1920, which deed was signed by James W. Morrison, the issue is whether or not this deed was executed for a consideration to Max Krouch to be a mineral deed, or was it properly executed, and, if so, is it a mortgage or a deed, and the issue involved for the court to try is whether said mineral deed was given as a conveyance or a mortgage. * * * "

At the conclusion of the evidence the court made the following finding on the question tried:

"The court finds that the mineral deed executed by James W. Morrison to Max Krouch was thoroughly understood by the parties at that time, and it was a conveyance of the mineral rights instead of an instrument for the security of money."

This was excepted to by the intervener, and no further finding was requested.

That part of the journal entry of judgment covering the mineral deed followed the court's finding on the question in this language:

"The court further finds that the mineral deed of August 30, 1920, executed by James W. Morrison to Max Krouch, was intended to be a deed absolute, and that the same was not intended to be additional security or a mortgage as claimed by the said James W. Morrison, and the evidence is insufficient to warrant the court in holding said mineral deed to be a mortgage"

—and directed the sale of the property subject to the rights of the plaintiff under the mineral deed.

Under the pleadings, and the stipulation which seems to have been followed by the trial court, as presenting only one exact issue, the intervener plainly sought to bring the instrument within section 5253, C. O. S. 1921, which is as follows:

"Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such"

—and upon which single issue so made the court held for the plaintiff.

The motion for new trial makes the usual several general assignment of errors, but the only specific assignment is the holding of the court that the instrument was a deed and not a mortgage and the refusal of the court to cancel the deed. The petition in error closely follows the motion for new trial. And the brief of the intervener in stating the assignment of errors groups all of them into three: The first being that the judgment is against the clear weight of the testimony, and the combined substance of the other two is that the court erred in not holding that mineral deed a mortgage and in refusing to cancel the same upon payment of the mortgage.

Now, it is apparent that up to this stage of the proceeding we had the single issue: The intervener contending that the instrument is a mortgage, and the plaintiff saying that it is what it purports on its face to be—a deed.

After stating the assignment of errors in his brief, as we have heretofore mentioned, the intervener thereunder then makes this as his first proposition:

"The mineral deed, being executed at the same time as the mortgage, as a part of the same transaction, and for the same consideration, it is a collateral advantage, in addition to the interest which equity will not permit a lender to obtain, and same constitutes a by-agreement clogging the equity of redemption which equity will not permit."

The proposition has no relation to the theory upon which the deed was assailed in the trial court. It is in the nature of a confession and avoidance. It seems not to deny that the instrument was intended by the parties to actually convey the mineral rights, but says that in law it cannot stand for the reasons: (1) That plaintiff lender would thereby have, as compensation for the money loaned, more than the interest provided for in the note and mortgage; and (2) that the deed fettered intervener's equity of redemption—his right in equity to redeem the land by payment of the mortgage. The argument made and also the authorities cited under this proposition relate to the questions raised by the proposition, and not to the question tried.

It is a well-settled rule that a party to a suit having proceeded in the trial court upon a theory and lost, will not be permitted, upon appeal to this court, to change his base and seek to reverse a case upon a different theory. Harris v. First National Bank of Bokchito, 21 Okla. 189, 95 Pac. 781; Border v. Carribine, 24 Okla. 609, 104 Pac. 906; Duffey v. Scientific American Compiling Department, 30 Okla. 742, 120 Pac. 1088; Smith v. Colson, 31 Okla. 703, 123 Pac. 149; Checotah v. Hardridge, 31 Okla. 742, 123 Pac. 846; Stuart v. Edwards, 84 Okla. 207, 202 Pac. 1032; Oklahoma City v. Coombs, 125 Okla. 194, 257 Pac. 295.

The early case of Harris v. First National Bank, supra, will illustrate the rule. The bank brought replevin against Harris to recover possession of certain personal property for the purpose of selling the same under a chattel mortgage given the bank by one Clark to secure his note. Harris defended in the lower court on the theory that before the bank's mortgage was given, he purchased the property from Clark, and was thereunder in possession. Harris lost and appealed. In this court he tried to reverse the case on the theory that he was entitled to retain possession and defeat the suit by reason of a verbal mortgage on the property given by Clark. The court in the opinion said:

"The appellant bases his right to retention of the property on his absolute ownership of it prior to the execution and delivery of the mortgage to the bank, and when that claim failed, he is not entitled to have his theory of verbal mortgage considered for the first time in the Supreme Court."

It is obvious that this court should follow its long established practice and decline to consider and decide this case upon a theory never presented to the trial court.

We will now consider the question properly before us, whether the instrument was a mortgage or a deed.

We have said that where an instrument on its face is an absolute and unqualified conveyance of realty, or of an interest therein, before a party can have it declared a mortgage, the burden is upon him to establish such fact by cogent, clear, convincing and satisfactory proof. Hunter v. Murphy, 124 Okla. 207, 255 Pac. 561, and authorities there cited.

The question is one of equitable cognizance, and therefore this court will not disturb the judgment unless it is clearly against the weight of the testimony. Prentice v.

Freeman, 76 Okla. 260, 185 Pac. 87; Renas v. Green, 88 Okla. 170, 212 Pac. 755.

The testimony of the intervener substantially followed the allegations of his petition as to the circumstances under which he signed the note, mortgage and mineral deed on August 30, 1920, and there is other evidence tending to establish his claim that the mineral deed was also given in security of the debt covered by the note and mortgage and was to be released upon payment of the debt. The evidence disclosed that there was a judgment against the intervener and some other parties, which judgment operated as a lien on this land; and that he applied to Julius Krouch to assist him in being relieved of said judgment and some other indebtedness. Julius Krouch and the plaintiff here were brothers and partners in business. Max Krouch living at Tecumseh and Julius Krouch in Oklahoma City. The substance of the testimony of Julius Krouch is to the effect that he had an agreement with the intervener that if he would take up the judgment and pay the other indebtedness, a mortgage would be made by the intervener for $475, and also he would execute a deed conveying to them one-half the mineral rights in the land; and he stated that he had a one-half interest in the rights conveyed by the deed. Julius Krouch, in May, 1920, took up the judgment paying therefor $350, and secured an assignment of the judgment to himself. He also paid another debt of $90 for the intervener. He paid some taxes and probably an abstract bill. But the evidence is not clear that he actually paid out more than $475. The land had little value for oil and gas possibilities at the time this transaction took place, and from the testimony, it had little more when this case was tried. There are some circumstances in the record strongly corroborating the testimony of Julius Krouch that the instrument was what it purported to be, a conveyance of one-half the mineral rights in the land. One of these circumstances is the fact that the mortgage for the debt furnished the mortgagee all the security the land was able to give, and this instrument if a mortgage added nothing to the security. But if the instrument were, in fact, a deed, it might have some independent value. The position in which the intervener placed himself in this case before the trial court was, to say the least, unfortunate. He contended (1) that he made a mineral deed which was in fact a mortgage; (2) that he signed the instrument relying upon the other party to insert their verbal contract into it after he had gone; and (3) that

he thereafter made a deed absolute on its face to his mother and brother conveying the property, and that this was in fact a mortgage, and that he therefore held the title to the land with the right to attack the mineral deed he had executed. Looking to his testimony he seemed intelligent, and there is nothing to indicate that he is a person not at all capable of looking after his interest, and one for whom the court ought, in this case, to act to extricate him from his plain contract.

The judgment of the trial court should be affirmed, and it is so ordered.

BENNETT, TEEHEE, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.